# CHARLESTON.

THOMAS B. JACKSON, *et al. v.* JOSEPH F. KENT, *et al.*

(No. 6132)

Submitted May 1, 1928. Decided September 18, 1928.

*Fitzpatrick, Brown & Davis,* and *S. E. W. Burnside,* for appellants.

*Malcolm Jackson,* for appellees.

38

Maxwell, Judge:

Plaintiffs, Thomas B. Jackson and Anna A. Jackson, devisees under the will of their mother, the late Louise F. Jackson, a daughter of the late Thomas F. Broun, and Ann Conway Powers, another daughter, brought this suit in July, 1925, against defendants to enjoin certain of the defendants from entering upon a tract of 1780 acres of land in Boone County described along with another tract of 2,000 acres in a certain lease for oil and gas purposes executed by the said Thomas F. Broun to Joseph F. Kent January 30, 1912, and from drilling any well or doing anything thereon under said lease; also to set aside and cancel as a cloud on plaintiff's title to said 1780 acres said lease of January 30, 1912, and a subsequent lease of said 1780 acres made by said Joseph F. Kent, on December 16, 1924, to L. A. Casci, and to enjoin the drilling of any well under said lease and the said Kent and E. Fontain Broun from claiming any interest to said tract of 1780 acres under the lease of January 30, 1912, and from exercising or attempting to exercise thereunder any right or authority as to said 1780 acre tract.

By the lease of January 30, 1912, by said Broun to Kent, the lessor thereby undertook to lease to Kent, his heirs, executors, administrators or assigns, for the sole and only purpose of mining and operating for oil and gas, and of laying pipe lines and of building tanks, stations and structures thereon and taking care of the said products, "All those certain *tract* of land situate in Sherman District, Boone County, and State of West Virginia on the waters of Big Coal River, to-wit, (1) 2000 acres, Joes Creek; (2) 1780 acres chiefly on Stollings Fork of Laurel Creek, reserving, however, therefrom 200 feet around the buildings on which no well shall be drilled by either party, except by mutual consent."

The term or limitations of this lease is described therein as follows: "It is agreed that this lease shall remain in force *for the term of ten years* from this date, and as long thereafter as oil or gas, or either of them, is produced from said premises by the party of the second part, his heirs, executors, administrators or assigns." In consideration whereof, the

covenants of the lessee are as follows: "1st. To deliver to the credit of the first party, his heirs or assigns, free of cost, in the pipe line to which he may connect his wells, the equal 1/8 part of all oil produced and saved from the leased tracts as T. L. Broun owns in each of the above tracts; and 2nd, To pay $250.00 Dollars per year for the gas from each and every gas well drilled on said premises, the product of which is marketed and used off the premises, said payment to be made on each well within sixty days after commencing to use the gas therefrom, as aforesaid ,and to be paid yearly thereafter while the gas from said well is so used."

Other covenants of the lessee are: "To locate all wells so as to interfere as little as possible with the cultivated portions of the farm." "To complete a well on said premises within one year from the date hereof, or pay at the rate of 25 cts. per acre per year quarterly in advance for each additional three months such completion is delayed from the time above mentioned for the completion of such well until a well is completed; and it is agreed that the completion of such well shall be and operate as a full liquidation of all rental under this provision during the remainder of the term of this lease. Such payments may be made direct to the lessor, or deposited to his credit in Kanawha National Bank, Charleston, W. Va. The tracts above described being the same mentioned in the deed executed by Thomas L. Broun and Angus W. McDonald, Trustee, to Charles M. Broun, Trustee, and others, dated April 10th, 1911, recorded in Deed Book No. 101, page 177, to 182, Boone County Clerk's office."

A very pertinent, final, and one of the dominant, provisions or covenants in the lease is: "It is agreed that the second party is to have the privilege of using sufficient water from the premises to run all necessary machinery and at any time to remove all machinery and fixtures placed on the said premises; and, further, upon the payment of Two Dollars, at any time, by the party of the second part, his heirs, successors or assigns, to the party of the first part, his heirs, successors or assigns, said party of the second part, his heirs, successors or assigns, shall have the right to surrender this lease or any tract therein for cancellation, after which all payments and

liabilities thereafter to *accrve* under and by virtue of its terms shall cease and determine, and this lease become absolutely null and void.''

(This opinion to this point was drafted by JUDGE MILLER and is in the language employed by him. He had this case under consideration when he was overtaken by illness a few weeks before his death.)

To the foregoing statement of facts it should be added that a dry hole was drilled during the latter part of the year 1912 upon the 2000 acre tract. In January 1920 an oil well was drilled upon the said 2000 acre tract; another oil well was drilled thereon in August, 1920, and a third oil well in May, 1920. No delay rentals were paid under the lease after the completion of the dry hole in 1912. Royalties have been paid continually to the present time upon the oil produced from the oil wells drilled in 1920 and 1921. No well has ever been drilled on the 1780 acre tract.

The circuit court, upon final hearing upon the pleadings and agreed statement of facts, found that the plaintiffs were entitled to the relief prayed for, and a decree effectuating the court's holding was entered. The appellants (defendants below) prosecute this appeal from that decree.

The primary question here presented for decisions is whether the terms of the lease are such as to merge the two separate tracts into one boundary for the purposes of the lease.

While it is true that separate and disconnected tracts of land may be merged in an instrument of lease for oil and gas development purposes, it does not follow as a matter of course that because two or more tracts of land are included in a lease they must necessarily be deemed to be merged. Whether they are merged or remain separate entities depends upon the intention of the parties as disclosed by the terms of the lease itself, and in determining the meaning of the terms employed in the lease the conduct of the parties with relation thereto may be considered.

In support of their very able argument that the two tracts of land described in the lease now under consideration are merged into one body by the terms of that instrument and for the purposes thereof, counsel for appellants cite the fol-

lowing texts and cases: Mills & Willingham on Law of Oil & Gas, page 118; Thornton on Oil & Gas (2d Ed.), sec. 820; *Gypsy Oil Co.* v *Cover* (Okla.), 189 Pac. 540; *Brewster* v. *Zinc Co.* (C. C. A. 8th Cir.), 140 Fed. 801; *South Penn Oil Co.* v. *Snodgrass,* 71 W. Va. 438; *Wilson* v. *Purnell* (Ky.), 250 S. W. 850; *Pierce Oil Corp.* v. *Schacht* (Okla.), 181 Pac. 731; *Harness* v. *Eastern Oil Co.,* 49 W. Va. 232; *Lynch* v. *Davis,* 79 W. Va. 437; *Cadillac Oil & Gas Co.* v. *Harrison* (Ky.) 244 S. W. 669; *Douthitt* v. *Wheeler* (Okla.), 236 Pac. 408.

In the first text cited the following language is employed by the authors:

"On the principle of the indivisibility of the lease contract, where the lease covers several tracts of land, although they may have passed into the ownership of different parties since the execution of the lease, a producing well drilled upon any of the tracts, during the term, will extend the fixed term as to the other tracts."

And in support of their text the authors cite several cases, among them the West Virginia cases of *South Penn Oil Co.* v. *Snodgrass, supra; Lynch* v. *Davis, supra;* and *Harris* v. *Michael,* 70 W. Va. 356; and all of the other cases above enumerated. These cases do not justify the breadth of the statement employed by the text writers. In the opinion in the *Snodgrass* case the following statement of facts appears at page 440: "C. A. Snodgrass, M. J. Snodgrass, his wife, and O. W. Snodgrass, owning, respectively, the three contiguous tracts of 329 acres, 143 acres and 127.5 acres, executed a single lease covering all of them and describing the premises as a single tract of 600 acres more or less." In comment on this situation the court said at page 441: "Failure to drill wells on two of the tracts, namely, the 134 acre tract and the C. A. Snodgrass tract, within the ten year period, however, necessitates an inquiry as to whether there were three separate leases within the meaning of the proviso, requiring a well to be drilled, and the clause extending the lease beyond the specific term of ten years. We think not. Nowhere in the lease

is there an intimation of several ownerships of parts of it, or a suggestion of intent to make separate tenancies.'' We deem that case authority for the proposition that several parcels may by the language of the lease be merged for the purposes in view, and be subjected to the principles of law applicable to a single boundary, but not for the proposition that the mere enumerating of several tracts in a lease of necessity constitutes a merger rendering applicable in all events the language of the text that ''a producing well, drilled upon any of the tracts during the term, will extend the fixed term as to the other tracts''.

Neither does the case of *Lynch* v. *Davis, supra,* apply the merger theory other than where such is the manifest intent of the parties. The facts are stated in the opinion at page 438: ''The lease is by its terms the joint lease of all the parties covering the whole tract of land, and describing it as a single parcel, and no indication is made in the lease of any holding of any part of it in severalty.''

The case of *Harris* v. *Michael,* cited, is a different sort of case altogether from the one at bar, as appears from point one of the syllabus: ''When a lessee for oil and gas producing purposes segregates the lease by assigning to another all rights thereunder as to a distinct parcel of the land, a discovery of oil on the part assigned will give the lessee a vested right to produce oil on the part retained, though he has taken no possession of that part.''

The second text (Thornton's Oil & Gas) cited by appellants would seem also to be of sufficient generality to sustain appellants' position, but it is to be observed that the author cites in support of his text only the case of *Harness* v. *Eastern Oil Co.; supra,* and upon examination of that case it is found to be based on a situation where a husband and wife leased as a unity of 187½ acres their two adjoining tracts of 152 and 35½ acres, respectively, and of which the court says in the opinion: ''The lease shows on its face to be a joint lease of a single tract, and the lessors and lessees have so treated it all the way through.''

To continue with the authorities cited by appellants.

*Gypsy Oil Co.* v. *Cover.* The lease covered two disconnected

tracts of 120 and 40 acres, respectively, but there was an express merger by the lease. The demise was of "all *that certain tract of land* situate in the county of Okmulgee, State of Oklahoma, * * * containing 160 acres more or less."

*Brewster* v. *Lanyon Zinc Co.* There were involved in that case three disconnected tracts of land. The following clauses appear in the lease:

> "(1) Second party (the lessee) agrees to drill a well upon said premises within two years from this date, or thereafter pay to first party (the lessor) seventy-eight dollars annually until said well is drilled, or the property hereby granted is conveyed to the first party."

> "(9) If no well shall be drilled upon said premises within five years from this date, second party agrees to reconvey, and thereupon this instrument shall be null and void."

Apropos whereof the circuit court of appeals said: "The purpose and effect of these clauses was plainly to give the lessee two years within which to drill a well (not three wells, but one) upon the leased premises—not each tract, but the entire premises." Thus it appears that in that case, too, there was a unified proposition by the terms of the lease itself. In the instant case the provision of the lease as to the completion of *a well* on said premises can not be given similar import to that appearing in the *Brewster* case, because of other provisions appearing in the Broun lease, hereinafter noted.

*Wilson* v. *Purnell.* While the second point of the syllabus of that case would seem to cover the proposition here contended for by appellants, it appears from the opinion that there was involved only a situation where a merger of the separate tracts was effected by the terms of the instrument itself. The court says: "The terms of the lease are the same with respect to all property, treating it as one boundary * * *."

*Pierce Oil Corporation* v. *Schacht.* That case involved a wholly dissimilar state of facts from those at bar and a different principle of law was applied. This appears from

syllabus two: "Where a tract of land subject to an oil and gas lease is transferred to different parties, the purchaser of each portion takes the same subject to such lease; and, should the lessee thereafter discover and produce oil or gas from the leased premises, the purchaser is entitled to the royalties accruing from the oil and gas produced on the portion of the premises owned by him."

*Cadillac Oil & Gas Co.* v. *Harrison.* The holding there is that where a portion of a tract of land under oil and gas lease is sold and subsequently a well is drilled within the terms of the lease on the portion unsold, the lease is thereby continued as to the portion sold as well as that which had not been sold.

*Douthitt* v. *Wheeler.* In that case there was presented a situation involving a lease on 100 acres of land consisting of two tracts of 80 and 20 acres, respectively. The 20 acre tract was subsequently assigned and two wells were drilled thereon, and later abandoned. There seems to have been no development on the 80 acre tract. On that state of facts the court says in the syllabus: "* * * where the requirements of the lease have not been complied with so as to keep the same alive and in force as to the 80 acre tract, an abandonment of the lease on the 20 acre tract will operate as an abandonment of the lease as to said 80 acre tract." That case deals with the two tracts as merged for the purposes of the lease, and to that extent would seem to be authority for the position urged by appellants herein. However, the facts do not satisfactorily appear from the opinion, and there is nothing therein to indicate that there was involved a situation other than one where the express terms of the lease made manifest the intention of the parties to combine the separate tracts for the purposes to be accomplished.

The three West Virginia cases relied on by appellants have already been discussed and differentiated from the case in hand.

In the light of the principles disclosed by the foregoing cases, we are of opinion that the terms and conditions of the lease under consideration are not such as to disclose the intention on the part of the parties thereto to merge the two

tracts of land for the purposes of the lease, but rather that the contrary intention is apparent.

In the first place the demise is of "all those certain *tract* of land, situate in Sherman District, Boone County, and State of West Virginia on the waters of Big Coal River, to-wit: (1) 2000 acres Joes Creek, 2 1780 acres chiefly on Stollings Fork of Laurel Creek." It will be noted that there is nothing in this language to indicate an intention to merge the two tracts. This is all the more apparent from an inspection of the lease itself. We have photostat-copies before us. The lease is on a printed form. The printed word "that", appearing in the clause just quoted was erased and the word "those" inserted in lieu thereof, so that the phrase "all that certain tract of land" was changed to read "all those certain *tract* of land." This is clearly at variance with any supposed intention to treat the two parcels as merged into a single boundary for the purposes in view.

And again, as stated by JUDGE MILLER, one of the dominant provisions of the lease is to be found in the last paragraph. It is quoted in full in that part of this opinion which was written by JUDGE MILLER. The surrender portion of this paragraph read, in its printed form, "shall have the right to surrender this lease for cancellation". There was inserted in writing the words "or any tract therein", so that it reads in the lease as executed, "shall have the right to surrender this lease or any tract therein for cancellation." This change does not harmonize with the appellants' theory that the parties intended by the terms of the lease to merge the two tracts.

True, the requirement of the lease that the lessee complete *a well* on said premises within one year from the date of the lease or pay certain specified rental in lieu thereof, tends to support the contention of appellants that for the purposes of the lease the two tracts were to be considered as a unity, but we think that any inferences to be drawn from this clause must yield to the stronger inferences which follow from the other clauses above mentioned and discussed.

In the light of all which, we are of opinion that the circuit court committed no error in holding that the lease of January 30, 1912, was not in force and effect as to the said tract of

1780 acres after the expiration of the ten year term thereof.

This conclusion and finding is in harmony with recognized rules of construction which require that ''when its terms will permit it, under the rules of law, an oil lease will be so construed as to promote development and prevent delay and unproductiveness,'' *Parish Fork Oil Co.* v. *Bridgewater Gas Co.*, 51 W. Va. 583; and that leases for oil and gas development should be construed most strongly against the lessee rather than the lessor. *Martin* v. *Coal & Oil Corp.*, 101 W. Va. 721; 40 C. J., p. 1053.

It should be observed in this connection that it appears from the stipulation of facts in this cause that the lease in question was prepared on a printed form and that the written portions thereof are in the handwriting of the lessee, Kent.

Secondary propositions urged by the appellants are rendered unimportant by our finding on the controlling proposition above considered.

Perceiving no error in the decree complained of, the same is affirmed.

*Decree affirmed.*