574 S.E.2d 782

**Ralph E. "Gene" BUTLER, Plaintiff Below, Appellant,**

v.

**John E. PRICE, an Individual, and CSX Transportation, Inc., a Foreign Utility Corporation Licensed to do Business in West Virginia, Defendants Below, Appellees.**

No. 30402.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 2002.

Decided Oct. 18, 2002.

Larry L. Skeen, Esq., Skeen and Skeen, Charleston, West Virginia, Attorney for Appellant.

Andrew S. Zettle, Esq., Huddleston, Bolen, Beatty, Porter & Copen, LLP, Huntington, West Virginia, Attorney for Appellee, CSX Transportation, Inc.

Justice ALBRIGHT, deeming himself disqualified, did not participate in the decision in this case.

Judge LOUIS H. BLOOM, sitting by temporary assignment.

PER CURIAM:

This declaratory judgment action is before this Court upon an appeal from an order entered in the Circuit Court of Wood County on July 23, 2001. Pursuant to that order, the Circuit Court held that an 1882 agreement which established a railroad right-of-way through the tract of land later occupied by the appellant, Ralph E. "Gene" Butler, did not provide Butler with an implied right to cross the right-of-way for commercial purposes. The right-of-way currently belongs to the appellee, CSX Transportation, Inc. Appellant Butler was under a contract of sale to purchase the land from its record owner, John E. Price.

This Court has before it the petition for appeal, all matters of record and the arguments of counsel. As discussed below, this Court is of the opinion that, inasmuch as the contract of sale between appellant Butler and Price was terminated and that Butler was evicted from the property, appellant Butler lacks standing to challenge the ruling of the Circuit Court upon the implied crossing issue. Consequently, this appeal is dismissed, and this action is remanded to the Circuit Court for further proceedings consistent with this opinion.

## I.

### FACTUAL BACKGROUND

The tract in question is located in the City of Williamstown in Wood County. It is bounded on the west by the Ohio River and on the east by West Virginia Route 14.

By agreement dated May 24, 1882, and of record in the Office of the Clerk of the County Commission of Wood County, John Fischer granted to the Wheeling, Parkersburg and Charleston Railway Company a 50 foot right-of-way for the construction of a railroad track through the property and parallel to the Ohio River and Route 14. As a result, although the tract could have been entered by way of the Ohio River, no access was possible from Route 14 without crossing the railroad right-of-way. Nevertheless, as the Circuit Court noted, no right to cross the right-of-way was mentioned in the 1882 agreement.

John Fischer is a predecessor in title to John E. Price, the current record owner of the property. The appellee, CSX, is a successor to the Wheeling, Parkersburg and Charleston Railway Company.

On May 4, 1999, appellant Butler and Price entered into a contract of sale pursuant to which Butler agreed to purchase the property for $130,000. According to the contract, the purchase included "all rights" to cross the railroad right-of-way. The contract further provided that, in the event of the failure of Butler to make monthly payments, Price could terminate the contract and regain possession of the land.

Appellant Butler made improvements to an existing structure on the property and converted it into a seafood restaurant known as "Steamers." From the beginning, however, Butler's commercial activities were subject to

a dispute with appellee CSX concerning the railroad right-of-way. Butler maintained that, based upon necessity and upon the representations of Price, he and his customers had an implied right to cross the railroad right-of-way for commercial purposes. CSX, on the other hand, maintained that no such right existed and that, in fact, the presence of the restaurant and its customers constituted a safety hazard. In the latter regard, CSX asserted that Butler had a responsibility for, but never pursued, the installation of safety equipment, such as lights and guardrails, in the area. Ultimately, CSX fenced off the alleged crossing, and the restaurant closed.

In January 2001, Butler filed this action in the Circuit Court of Wood County, seeking a declaratory judgment to the effect that he and his customers had an implied right to cross the railroad right-of-way for commercial purposes. In addition, Butler sought damages from CSX and Price for interference with his restaurant business. With regard to Price, Butler requested a refund of monies paid for the property to date or, in the alternative, a reformation of the contract of sale in order to reduce the purchase price. The claims against Price were based upon Butler's allegation that Price misrepresented the existence of an established right to cross the railroad right-of-way.

In May 2001, appellant Butler and Price joined in a motion for declaratory relief and for partial summary judgment in which they alleged that the agreement of May 24, 1882, resulted in the retention by the landowner of an implied right to cross the railroad right-of-way. A hearing on the motion was conducted by the Circuit Court in June 2001. On July 23, 2001, the Circuit Court entered an order holding that the 1882 agreement provided no implied right to cross the right-of-way "for commercial purposes." The Circuit Court did not decide whether the 1882 agreement provided such an implied right for other purposes, such as residential, farm or recreational uses. As the order of the Circuit Court stated:

> [A]t the time the right-of-way agreement was made between Fischer and the Railway Company, there was no apparent or

necessary use for commercial purposes being made by John Fischer of any portion of the railway right-of-way; and the Court is of the opinion, and does find and declare that there was no implied right to use the railway right-of-way for commercial purposes reserved to Fischer and his successors in interest by the agreement dated May 24, 1882[.] * * * [T]his Court makes no ruling whether an implied crossing easement for residential, farm or recreational uses was reserved to Fischer and his successors in interest [.] * * * [T]he agreement dated May 24, 1882, . . . created no express or implied easement to use or occupy any portion of the railway right-of-way for commercial purposes in connection with Butler's operation of Steamers Restaurant.

In the meantime, Price served appellant Butler with a notice of termination of the contract of sale, based upon the failure of Butler to make the monthly payments for the property. In July 2001, Price filed an action in the Magistrate Court of Wood County and obtained an eviction order against Butler in that Court. Butler's appeal from Magistrate Court was rejected by the Circuit Court of Wood County, as reflected in an order entered in the Circuit Court on September 25, 2001.

## II.

## STANDARDS OF REVIEW

In syllabus point 3 of *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995), this Court noted: "A circuit court's entry of a declaratory judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Coleman*, 211 W.Va. 451, 566 S.E.2d 588 (2002). More specifically, this Court, in *Cox, supra,* stated that "because the purpose of a declaratory judgment action is to resolve legal questions, a circuit court's ultimate resolution in a declaratory judgment action is reviewed *de novo;* however, any determinations of fact made by the circuit court in reaching its ultimate resolution are reviewed pursuant to a clearly erroneous standard." 195 W.Va. at 612, 466 S.E.2d at 463. *See also, Stull v. Firemen's*

*Pension and Relief Fund,* 202 W.Va. 440, 444, 504 S.E.2d 903, 907 (1998).

However, preliminary to an application of the above standards of review is the question of appellate jurisdiction, particularly in terms of Butler's standing to bring this appeal. As indicated above, the July 23, 2001, order of the Circuit Court now before this Court resulted from the filing by appellant Butler and Price of a motion for a declaratory judgment and for partial summary judgment. The Circuit Court denied relief to Butler and Price, and only Butler, who was evicted from the property, filed an appeal to this Court. A number of claims remain at the Circuit Court level, such as Butler's allegation of misrepresentation against Price, as well as Butler's claim for damages against CSX for interference with the restaurant.

Those remaining claims notwithstanding, the Circuit Court indicated, on the record, that the order of July 23, 2001, is appealable to this Court pursuant to Rule 54(b) of the West Virginia Rules of Civil Procedure. As Rule 54(b) states in part:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

■ However, the Circuit Court's designation of its order as appealable to this Court under Rule 54(b) is not dispositive. As this Court noted in Province v. Province, 196 W.Va. 473, 473 S.E.2d 894 (1996): "Even if we were to assume that the mandates of Rule 54(b) have been met, a circuit court's determinations, which directly affect the scope of our appellate jurisdiction are not conclusive on us." 196 W.Va. at 478, 473 S.E.2d at 899. Accordingly, the designation of the July 23, 2001, order of the Circuit Court as an appealable order under Rule 54(b) does not resolve the issue of this Court's jurisdiction to review the Circuit Court's ruling upon the implied crossing issue, especially in the context of the question

of appellant Butler's standing to challenge that ruling and in view of the fact that Price, the record owner of the property, did not join in the appeal.

## III.

## DISCUSSION

■ The appellee, CSX Transportation, Inc., contends, inter alia, that appellant Butler lacks standing to challenge the July 23, 2001, order of the Circuit Court. As stated by CSX, Butler is asking this Court to determine the respective rights of the successors in interest to the May 24, 1882, agreement between John Fischer and the Wheeling, Parkersburg and Charleston Railway Company. That agreement is the basis of the controversy concerning the existence of an implied right to cross the railroad right-of-way. According to CSX, Butler is not a successor in interest to the 1882 agreement because: (1) his contract of sale with Price was terminated, (2) the restaurant has closed and (3) Butler's eviction from the property was upheld in a separate action. Consequently, Butler has no standing to pursue this appeal.

Appellant Butler, on the other hand, contends that the claims remaining before the Circuit Court, including his claim for damages against Price for misrepresentation, are dependent upon this Court's resolution of the implied crossing issue. Butler asserts that he, thus, has standing to pursue this appeal. CSX responds, however, by stating that the July 23, 2001, order of the Circuit Court, holding that Butler is not entitled to an implied right to cross the right-of-way, is the law of the case (especially since Price did not challenge that ruling) and that, without this appeal, Butler can still litigate his claim against Price for misrepresentation.

■ In syllabus point 1, of *West Virginia Board of Dental Examiners v. Storch,* 146 W.Va. 662, 122 S.E.2d 295 (1961), this Court held: "The general rule, subject to certain exceptions, is that appeals will be dismissed where there is no actual controversy existing between the parties at the time of the hearing." *Gilmore v. State Department*

*of Education*, 191 W.Va. 227, 445 S.E.2d 168 (1994). That principle is consistent with syllabus point 4 of *Whyel v. Jane Lew Coal & Coke Company*, 67 W.Va. 651, 69 S.E. 192 (1910), which states: "As many times decided, this Court sits to redress wrongs and not to settle moot questions; and whenever it is made to appear that by time or other cause the matter in controversy has been extinguished pending the appeal, the appeal will be dismissed." See also, syl. pt. 1, *Orwasky v. Chuma*, 148 W.Va. 349, 135 S.E.2d 248 (1964), and syl. pt. 1, *State ex rel. Lilly v. Carter*, 63 W.Va. 684, 60 S.E. 873 (1908), both of which state that moot or abstract propositions are not cognizable by this Court. As stated in *Orwasky:*

> The law is well settled that when it appears from the record or extrinsic evidence that no controversy exists between the litigants or that a previously existing controversy has been settled *or has ceased to exist* a writ of error or an appeal will be dismissed for the reason that courts do not sit to determine moot questions.

(emphasis added) 148 W.Va. at 352, 135 S.E.2d at 250.

Closer to the circumstances of this action is *Rippetoe v. O'Dell*, 166 W.Va. 639, 276 S.E.2d 793 (1981). In *Rippetoe*, a dispute arose between property owners concerning the use of a road dividing the parties' respective parcels. Specifically, the appellants asserted that, by moving a gas line under the road to another section of the road, the appellees violated the appellants' right to use the road for ingress and egress to the appellants' property. This Court, in *Rippetoe*, held that, although the appellants could sue for damages brought about by the construction work attendant to the moving of the gas line, the appellants, who had no ownership interest in the road, lacked standing to assert that the appellees' right to maintain a gas line beneath the road had been exceeded. As stated in the *Rippetoe* opinion:

> The record of this case does not disclose the present fee owner of the roadway, but it is only that fee owner who has standing to raise an objection to the alleged violation by the appellees of the terms of their easement. * * * [T]he disposition of this

case is controlled by the absence of any legal right of the appellants to challenge the appellees' actions, and not by the nature of the appellees' rights [.]

166 W.Va. at 642–43, 276 S.E.2d at 796–97. *See also, Pingley v. Pingley*, 82 W.Va. 228, 95 S.E. 860 (1918), in which the plaintiff claimed an easement over the adjoining land of the defendant in order to access a county road. Later, the defendant acquired the tract of the plaintiff, thereby becoming the owner of both properties. The controversy, in *Pingley*, between the parties concerning the easement, thus, became moot, and the plaintiff's appeal to this Court was dismissed.

As in *Rippetoe* and *Pingley*, appellant Butler does not have an ownership interest in the property in question. He is neither a successor in the chain of title to the property nor a successor to the agreement of May 24, 1882, which established the railroad right-of way. Appellant Butler's 1999 contract of sale with Price expressly provided that, in the event of the failure of Butler to make monthly payments, Price could terminate the contract and regain possession of the land. Appellant Butler failed to make the payments, and Price terminated the contract. The restaurant closed, and Price regained possession of the property by way of an eviction proceeding instituted in the Magistrate Court of Wood County. The eviction was upheld by the Circuit Court. In every view, therefore, appellant Butler lacks standing to challenge the July 23, 2001, ruling of the Circuit Court upon the implied crossing issue. *See, Guido v. Guido*, 202 W.Va. 198, 202, 503 S.E.2d 511, 515 (1998), and *Coleman v. Sopher*, 194 W.Va. 90, 95 n. 6, 459 S.E.2d 367, 372 n. 6 (1995), which cases state, · in part, that, in order to have standing to challenge an action sought to be adjudicated upon appeal, a party must have a "legally protected interest."

In so holding, this Court is aware that the record indicates that Butler's loss of the purchase of the property is directly related to his inability to secure a right to cross the railroad right-of-way. The conclusion that Butler lacks standing to appeal the crossing issue, however, does not affect Butler's claim for damages against Price based upon Price's

alleged misrepresentation of the existence of an established right to cross the right-of-way. In that regard, although Price did not appeal from the Circuit Court's order of July 23, 2001, which found no such right to cross, the parties, in litigating the misrepresentation claim, may develop the record upon remand by submitting evidence concerning the prior uses of the property. Such evidence may bear upon Price's intent to misrepresent the true circumstances to Butler. In fact, such prior use evidence may disclose: (1) whether a crossing for any purpose existed over the railroad right of way, (2) whether access to the property from the Ohio River was ever utilized and (3) if utilized, whether such access eliminated the necessity of crossing the railroad right-of-way.

## IV.

## CONCLUSION

For the reasons stated above, the appeal of the appellant, Ralph E. "Gene" Butler, from the July 23, 2001, order of the Circuit Court of Wood County is dismissed, and this action is remanded to the Circuit Court for a resolution of the remaining issues in a manner consistent with this opinion.

Appeal dismissed, remanded with directions.

McGRAW, Justice, concurring:

I concur in the decision of this Court that appellant Butler lacks standing to appeal the ruling of the Circuit Court concerning whether he had an implied right to cross the right-of-way of CSX for commercial purposes. Butler is no longer on the property. However, as pointed out, he may pursue his claim against Price for misrepresentation. In fact, the implied crossing issue is but one aspect of this complex action. Nevertheless, having considered the arguments and briefs of counsel, which included a discussion of the crossing issue, I find it appropriate to set forth a few concerns with regard to the continuing question of railroad right-of-ways and private land ownership.

The determination of a private landowner's express or implied right to cross a railroad right-of-way involves special considerations in this State. As well known, the topography of West Virginia, with limited exceptions, is mountainous, resulting in any number of narrow valleys and complex water sheds. Consequently, a railroad right-of-way extending through a rural or small urban community in this State necessarily becomes a significant feature of daily life in that area. Thus, while private landowners in this State have, historically, been very accommodating toward the railroad business, it is reasonable to assume that, in many instances, a retained right to cross the railroad right-of-way was the landowner's only option to access his property.

That is indicated with regard to the property in this action. Here, the railroad was granted a right-of-way through the 50–acre tract of John Fischer in 1882. As a result, although the property could have been entered, in theory, by way of the Ohio River, no access was possible from the public highway without crossing the railroad right-of-way. Importantly, the 1882 grant to the railroad was by agreement, rather than by deed, which can only be interpreted to mean that Fischer retained a right to cross the tracks in some fashion in order to make use of his property. Even had a deed been utilized, its purpose would have been limited to the establishing of the railroad right-of-way, and, in my view, Fischer would have retained a right to cross the tracks. Moreover, the 1882 agreement indicated that part of the consideration for the right-of-way was the "advantage" that it would bring to Fischer, which tends to negate any inference that Fischer was giving up access to the highway. The circumstances surrounding the 1882 agreement may be typical in this State with regard to the granting of railroad right-of-ways by private landowners.

Finally, W.Va. Const. Art. XI, sec. 9, provides that railroads in West Virginia "are hereby declared public highways and shall be free to all persons for the transportation of their persons and property thereon, under such regulations as shall be prescribed by law [.]" That provision predates the 1882 agreement in this action. *See, Hart v. Baltimore & O.R.R. Co.,* 6 W.Va. 336, 357–58 (1873). In syllabus point 5 of *A & M Properties v. Norfolk Southern Corporation,* 203

W.Va. 189, 506 S.E.2d 632 (1998), this Court held that, under W.Va. Const. Art. XI, sec. 9, no interest in a railroad trackway can be established by way of adverse possession, prescriptive easement or equitable estoppel, so long as the trackway continues to be used for railroad purposes. The opinion in *A & M Properties*, however, did not address the issue of a retained interest by a private landowner to cross a railroad right-of-way. Such an interest would be an important factor in cases where the landowner's attempt to make appropriate use of his property becomes involved in a crossing dispute.

I, therefore, concur in the decision of this Court.

STARCHER, Justice, concurring:

I write separately to point out two aspects of the Court's opinion in this case.

1. We are decidedly *not* affirming the circuit court's conclusion that Mr. Price (and derivatively, Mr. Butler) as a matter of law did not and could not have a right to cross the CSX right-of-way for commercial purposes. Had we addressed the circuit court's summary judgment order, I am confident that we would have reversed it, if only because there were simply too many disputed factual issues for this decision to be made as a matter of law. There is, it should be noted, no authority in our law stating that any grantor of a railroad right-of-way is categorically excluded from reasonable non-interfering commercial use of that right-of-way— unless, of course, specific language to such an effect is included in the grant.

2. It is only Mr. Butler's failure to appeal his eviction—or to have the eviction case joined with the instant action—that compels the result in the instant case. Had he appealed his eviction, or had it joined with the instant case, we could have ruled on the circuit court's summary judgment order— and, I believe, we would have reversed it.

With these two understandings, I concur in the Court's judgment.