607 S.E.2d 765

**Michael D. FLANAGAN and Julie
L. Flanagan, Plaintiffs
Below, Appellants,**

v.

**Stephen P. STALNAKER, doing business
as Greenwood Rig Company, Defendant
Below, Appellee.**

No. 31716.

Supreme Court of Appeals of West Virginia.

Submitted: Sept. 15, 2004.

Filed: Dec. 1, 2004.

Larry L. Skeen, Esq., Skeen and Skeen, Charleston, for Appellants.

Loren B. Howley, Esq., Grantsville, for Appellee.

PER CURIAM.

In this appeal, the appellants, Michael and Julie Flanagan, ask this Court to reverse the August 19, 2003, order of the Circuit Court of Calhoun County which held that the appellants, who reside on a 50 acre tract of land in Sherman District, Calhoun County, are not entitled to free surplus gas from the appellee, Stephan P. Stalnaker, d/b/a Greenwood Rig Company, an oil and gas lessee who currently operates a well on the appellants' property. The appellants contend that they have a right to such gas pursuant to a 1990 lease which states that the lessors may take free surplus gas for use "in one dwelling house on said land."

The Circuit Court determined that adjoining the appellant's 50 acre tract is another 50 acre tract, owned by Robert and Annette Sweeney, which has received free surplus gas for its dwelling for many years prior to the appellants' claim. Both tracts were originally part of a 100 acre tract subject to a lease made in 1918 which included a similar free gas provision. In ruling against the appellant Flanagans, the Circuit Court concluded that the 1990 lease was supplemental to the 1918 lease, rather than a separate contract, and that, accordingly, the appellants' claim for free surplus gas is precluded by the free gas hook-up on the Sweeney tract.

This Court has before it the petition for appeal, all matters of record and the memoranda of law of counsel. As discussed below, this Court is of the opinion that the Circuit Court committed error in denying the appellants' claim for free surplus gas. The 1990 lease expressly provided for such gas for one dwelling and contained no language to the effect that the right was supplemental to the 1918 lease. The 1990 lease, although applicable to the original 100 acres, did not recognize that the property was divided many years ago into the two 50 acre tracts. Nevertheless, it permitted the drilling of a specific type of well on the appellants' tract to a depth not authorized under the 1918 lease. Accordingly, this Court holds that the appellants are entitled under the 1990 lease to free surplus gas for one dwelling on their 50 acre tract.

In addition to their claim for free surplus gas, the appellants sought damages for the alleged excessive use of their property by appellee Stalnaker in his oil and gas operations. Stalnaker, on the other hand, sought damages from the appellants for their alleged interference with his right to use the surface as outlined in the leasehold. In the August 19, 2003, order, the Circuit Court denied damages to the appellants, granted nominal damages to Stalnaker in the amount of $1.00 and awarded Stalnaker injunctive relief to prevent further interference by the appellants. As reflected in a subsequent order entered on December 18, 2003, the Circuit Court awarded appellee Stalnaker $812 in attorney fees regarding the degree to which the appellants' interference had been wilful and wanton. For the reasons stated below, this Court affirms those rulings.

Therefore, the August 19, 2003, order of the Circuit Court of Calhoun County is reversed to the extent that it denied the claim of appellants Michael and Julie Flanagan for free surplus gas for one dwelling on their 50 acre tract. That order, and the order of December 18, 2003, are affirmed as to the denial of the appellants' claim for damages, the granting of nominal damages and injunctive relief to appellee Stalnaker and the award to Stalnaker of $812 in attorney fees. Accordingly, this action is remanded to the Circuit Court for further proceedings consistent with this opinion.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1918, P.A. Bourn was the owner of a 100 acre tract of land in Sherman District, Calhoun County. In October 1918, he leased the oil and gas interests therein to Hope Natural Gas Company. The lease provided Bourn with free gas from the lessee's operations at the rate of 150,000 cubic feet per year for "one dwelling house on said land." Thereafter, Bourn divided the surface into 50 acre tracts. The surface of the first tract, including a dwelling, was conveyed by Bourn to his daughter and, ultimately, acquired by Robert and Annette Sweeney. The Sweeneys are receiving free gas pursuant to the 1918 lease, and their entitlement thereto is not in dispute.

The surface of the second 50 acre tract was conveyed to a second daughter and, later, to a descendant of Bourn by the name of Harry Lee Vannoy. No dwelling appeared on that tract until 1999. In June 2000, the appellant Flanagans acquired the surface of the tract and, soon after, claimed the right to free surplus gas.

Back in 1990, when the surface of the second tract was owned by Harry Lee Vannoy, the heirs of P.A. Bourn, including Vannoy, who was also a partial mineral owner, and others who owned mineral interests, executed a series of leases, known as the "1990

lease." The 1990 lease, although pertaining to the entire 100 acres, allowed Rogers & Son, the successor lessee to Hope Natural Gas Company, to drill a special deep well on the second tract.[1] That well was known as the Bourn # 4 Well and is the well from which the appellants claim the right to free surplus gas. As the 1990 lease stated:

> The Lessors may lay a line to any gas well drilled on said land and take gas therefrom free for their own use for heat and light in one dwelling house on said land, out of any surplus gas over and above what Lessee, its successors and assigns, may require to operate the lease [.]

Rogers & Son assigned its interest in the Bourn # 4 Well to the appellee, Stephen P. Stalnaker, in February 2002. In January 2003, Stalnaker notified the appellants, who had been temporarily receiving free surplus gas from the Bourn # 4 Well, that they did not have a right to such gas and that it would be terminated as of May 1, 2003.

In April 2003, the appellants filed a declaratory judgment action in the Circuit Court of Calhoun County seeking confirmation of their right to free surplus gas for their dwelling on the second 50 acre tract. In addition, the appellants sought damages for the alleged excessive use of their property by Stalnaker. Stalnaker, on the other hand, sought damages from the appellants for their alleged interference with his oil and gas operations.

The Circuit Court concluded that the 1990 lease was ambiguous and that extrinsic evidence would, therefore, be allowed to determine whether the 1990 lease provided the appellants with the right to free surplus gas. As the Circuit Court stated: "Because the 1990 agreement does not clearly state whether the free gas provision therein is supplemental to or separate from the free gas provision in the 1918 lease, it is proper to consider extrinsic evidence in order to ascertain the intention of the parties to the 1990 agreement [.]"[2]

Thereafter, on July 7, 2003, the Circuit Court conducted an evidentiary hearing concerning the appellant Flanagans' claim to free surplus gas. Evidence was also submitted on the parties' respective damage claims. Following the hearing, the Circuit Court entered the order of August 19, 2003, holding that the 1990 lease was supplemental to the original 1918 lease, rather than a separate contract, and that, therefore, the appellants' claim for free surplus gas was precluded by the free gas hook-up being used by the Sweeneys. In so ruling, the Circuit Court noted the testimony of Harry Lee Vannoy, one of the appellants' predecessors in title, who stated that, at the time he executed the 1990 lease as one of the lessors, he did not negotiate for a free gas right concerning the second 50 acre tract. Rather, as one of the mineral owners of the tract, he was more interested in royalties, than in free gas, from the oil and gas operations on the property.

In addition, the Circuit Court denied the appellants' damage claim, finding that the evidence revealed that appellee Stalnaker had used the appellants' tract only to the extent reasonably necessary to carry out his oil and gas operations under the leasehold. On the other hand, the Circuit Court found that the appellants had interfered with appel-

---

1. The record indicates that both Rogers & Son and appellee Stalnaker were of the opinion that the drilling of a well, such as the Bourn # 4 Well, to a deeper level was not authorized under the original 1918 lease. In fact, Rogers & Son, in 1983, obtained a more specific lease for the entire 100 acres allowing well construction to "those formations and horizons *above* fifty feet beneath the base of the Big Injun Formation [.]" In a similar fashion, the 1990 lease permitted the Bourn # 4 Well to go to "those formations and horizons *below* fifty feet beneath the base of the Big Injun Formation." Neither the 1983 lease nor the 1990 lease referred to the 1918 lease.

2. Syllabus point 2 of *Berkeley County Public Service District v. Vitro Corporation of America*, 152 W.Va. 252, 162 S.E.2d 189 (1968), holds, in part:

   > Extrinsic evidence may be used to aid in the construction of a contract if the matter in controversy is not clearly expressed in the contract, and in such case the intention of the parties is always important and the court may consider parole evidence in connection therewith with regard to conditions and objects relative to the matters involved.

   *See also*, syl. pt. 3, *Jessee v. Aycoth*, 202 W.Va. 215, 503 S.E.2d 528 (1998); syl. pt. 2, *International Nickel Company v. Commonwealth Gas Corporation*, 152 W.Va. 296, 163 S.E.2d 677 (1968).

lee Stalnaker's operations but that, inasmuch as the appellants had not caused any significant loss of production, they were only liable to Stalnaker for nominal damages in the amount of $1.00. Nevertheless, the Circuit Court awarded Stalnaker injunctive relief against further interference. Finally, pursuant to the order entered on December 18, 2003, the Circuit Court awarded Stalnaker $812 in attorney fees regarding the degree to which the appellants' interference, although not resulting in significant loss of production, had been wilful and wanton.

## II.

### DISCUSSION

■ As stated above, the appellant Flanagans filed a declaratory judgment action in the Circuit Court seeking confirmation of their right to free surplus gas under the 1990 lease. The Circuit Court determined that the 1990 lease was ambiguous, conducted a hearing to consider extrinsic evidence concerning the intention of the parties to the 1990 lease and held that the appellants were not entitled to the free surplus gas. Generally, this Court employs a *de novo* standard of review in such circumstances. Syllabus point 3 of *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995), holds: "A circuit court's entry of a declaratory judgment is reviewed *de novo.*" Syl. pt. 1, *Foundation For Independent Living v. Cabell–Huntington Board of Health*, 214 W.Va. 818, 591 S.E.2d 744 (2003); syl. pt. 1, *Butler v. Price*, 212 W.Va. 450, 574 S.E.2d 782 (2002). More specifically, this Court, in *Cox, supra*, stated that "because the purpose of a declaratory judgment action is to resolve legal questions, a circuit court's ultimate resolution in a declaratory judgment action is reviewed *de novo;* however, any determinations of fact made by

the circuit court in reaching its ultimate resolution are reviewed pursuant to a clearly erroneous standard." 195 W.Va. at 612, 466 S.E.2d at 463. *See also, Stull v. Firemen's Pension and Relief Fund*, 202 W.Va. 440, 444, 504 S.E.2d 903, 907 (1998).[3]

■ In this action, the Circuit Court proceeded correctly in first deciding, as a matter of law, whether the 1990 lease was ambiguous. As this Court held in syllabus point 1 of *Berkeley County Public Service District v. Vitro Corporation of America, supra:* "The mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syl. pt. 2, *Supervalu Operations v. Center Design*, 206 W.Va. 311, 524 S.E.2d 666 (1999). The Circuit Court concluded that, in view of similar provisions relating to free gas found in the original 1918 lease, the 1990 lease contained a latent ambiguity warranting the consideration of extrinsic evidence concerning the intention of the parties to the 1990 lease.[4] After hearing the evidence, the Circuit Court found that the 1990 lease did not create a new right to free gas but was merely supplemental to the 1918 lease. The Circuit Court reached that determination in large part upon the testimony of Harry Lee Vannoy who stated that, at the time he executed the 1990 lease as one of the lessors, he did not negotiate for a free gas right with regard to the second 50 acre tract. Thus, the Circuit Court held that the appellants had no right to free surplus gas under the 1990 lease.

■ This Court is of the opinion, however, that, under either analysis, i.e., whether the 1990 lease was clear or ambiguous, the Cir-

---

**3.** Similarly, syllabus point 1 of *Public Citizen, Inc. v. First National Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996), holds:

In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard.

Questions of law are subject to a *de novo* review.

Syl. pt. 1, *Heitz v. Clovis*, 213 W.Va. 197, 578 S.E.2d 391 (2003); *Interstate Drilling v. Parcoil Gathering Systems*, 199 W.Va. 359, 362, 484 S.E.2d 475, 478 (1997).

**4.** A latent ambiguity arises when the instrument upon its face appears clear and unambiguous, but there is some collateral matter which makes the meaning uncertain. *Collins v. Treat*, 108 W.Va. 443, 446, 152 S.E. 205, 206 (1930).

cuit Court should have found that the appellants were entitled to free surplus gas.

■ Syllabus point 3 of *Little Coal Land Company v. Owens–Illinois Glass Company*, 135 W.Va. 277, 63 S.E.2d 528 (1951), holds: "An oil and gas lease which is clear in its provisions and free from ambiguity, either latent or patent, should be considered on the basis of its express provisions . and is not subject to a practical construction by the parties." *Cotiga Development Company v. United Fuel Gas*, 147 W.Va. 484, 490, 128 S.E.2d 626, 631–32 (1962). Here, the 1990 lease expressly provided that the lessors "may lay a line to any gas well drilled on said land and take gas therefrom free for their own use for heat and light in one dwelling house on said land, out of any surplus gas over and above what lessee, its successors and assigns, may require to operate the lease [.]" That language is similar to the language found in the 1918 lease but not identical.[5]

In addition, the 1990 lease, although pertaining to the entire 100 acres, contained the provision, not appearing in the 1918 lease, that drilling would be permitted with respect to "formations and horizons below fifty feet beneath the base of the Big Injun Formation." That provision resulted in a new burden upon the appellants' 50 acre tract, the drilling of a special deep well known as the Bourn # 4 Well from which the appellants claim the right to free surplus gas. Such a well was not specifically contemplated or authorized under the 1918 lease. Moreover, the 1990 lease contained no language to the effect that it was supplemental to, or a continuation of, the 1918 lease. Nor did the 1990 lease make any reference to the 1918 lease.

In ruling against the appellant Flanagans, the Circuit Court emphasized the testimony of Harry Lee Vannoy who indicated that he was more interested in receiving royalties from the oil and gas operations on the property as a partial mineral owner than in receiving free gas as a surface owner. Thus, Vannoy, in 1990, did not negotiate for a free gas right concerning the second 50 acre tract. That testimony is deprived of significance, however, by the fact that, in 1990, there was no dwelling of any kind on the second 50 acre tract as to which a free gas hook-up would have applied. No dwelling appeared on the tract until 1999 shortly before the acquisition of the property by the appellants.

■ As long recognized: "The general rule as to oil and gas leases is that such contracts will generally be liberally construed in favor of the lessor, and strictly as against the lessee." Syl. pt. 1, *Martin v. Consolidated Coal & Oil Corporation*, 101 W.Va. 721, 133 S.E. 626 (1926). *See also*, syl. pt. 5, *Energy Development Corporation v. Moss*, 214 W.Va. 577, 591 S.E.2d 135 (2003); *Jackson v. Kent*, 106 W.Va. 37, 46, 145 S.E. 572, 575 (1928); 58 C.J.S. *Mines and Minerals* § 239 (1998). In this action, the original 100 acres was divided many years previously into the two 50 acre tracts. The appellants claim a right to free surplus gas for one dwelling upon the second 50 acre tract pursuant to the 1990 lease. The Sweeneys, on the first 50 acre tract, are receiving free gas pursuant to the 1918 lease. The 1990 lease makes no reference to the 1918 lease. Instead, it resulted in the drilling of a special deep well upon the appellants' property. Upon all of the above, this Court is of the opinion that the Circuit Court committed error in denying the appellants' claim for free surplus gas.[6]

---

**5.** The free gas provision found in the 1918 lease states that the lessors:

> may lay a line to any gas well on said land or to second party's pipe line leading from said well to market, to take gas produced from said well for their own use for heat and light in one dwelling house on said land at [lessors'] own risk, subject to the use, operation, pumping and right of abandonment of the well and pipeline by the lessee; the first one hundred fifty thousand cubic feet of gas so taken in each year shall be free, but all gas in excess of one

> hundred fifty thousand cubic feet taken in each year shall be paid for by the [lessors].

**6.** It should be noted that appellee Stalnaker contends that the appellants are not entitled to benefit from the free surplus gas provision of the 1990 lease because, as owners of the surface only of the second 50 acre tract, the appellants lacked privity of contract with the 1990 lessors. The 1990 lease was made after a severance of the surface of the property from the mineral interests, and the 1990 lessors were mineral owners. Thus, according to Stalnaker, the dissimilarity of interests between the appellants and the 1990

The issues concerning the parties' respective claims for damages are primarily fact based and are, therefore, subject to a clearly erroneous standard of review in terms of the August 19 and December 18, 2003, orders of the Circuit Court.

The appellants sought damages for the alleged excessive use of their property by appellee Stalnaker in his oil and gas operations. Specifically, the appellants asserted that Stalnaker destroyed fences, constructed an unnecessary gate and caused erosion problems in his use of the appellants' 50 acre tract, not only because of his operations thereon but also because of his use of the tract to access his leasehold interest known as the "Board Lease" on adjoining property. However, noting that the 1990 lease expressly gave Stalnaker the right to access the appellants' property and to access adjoining property therefrom,[7] the Circuit Court found:

> There was no evidence that [Stalnaker] used the surface property except insofar as reasonably necessary for operation and maintenance of his wells, access road and pipeline on the subject 100 acre oil and gas leasehold estate and the adjacent Board lease [.] Furthermore, there was no evidence of any damage to the [appellants'] property [.]

Accordingly, the Circuit Court denied the appellants' claim for damages.

Appellee Stalnaker, on the other hand, sought damages from the appellants for their alleged interference with his right to use the surface as specified in the leasehold. In that regard, the Circuit Court found that the appellants: (1) had piled brush to obstruct Stalnaker's right-of-way on the property, (2) had cut a hole in one of Stalnaker's gas pipelines and (3) had repeatedly harassed Stalnaker

about his right to be on their property. Nevertheless, the Circuit Court concluded that, inasmuch as the appellants had not caused any significant loss of oil and gas production, they were only liable to Stalnaker for nominal damages in the amount of $1.00. The Circuit Court awarded Stalnaker injunctive relief against further interference.

■ This Court has carefully examined the record, particularly the video tape and the numerous photographs depicting appellee Stalnaker's operations on the property, and concludes that the findings of the Circuit Court are supported by the evidence. Neither the video tape nor the photographs indicate that Stalnaker's use of the appellants' 50 acre tract was excessive or caused damage. Moreover, although those matters of evidence revealed that the appellants had repeatedly interfered with Stalnaker's operations, little or no harm to the actual production of oil and gas was shown. Consequently, the Circuit Court's denial of the appellants' damage claim, the granting of nominal damages to Stalnaker and the award of injunctive relief to prevent further interference should not be disturbed. See, Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), in which Justice Jackson, in a concurring opinion, said that findings of fact should be accepted by an appellate court "in absence of clear showing of error." 344 U.S. at 535, 73 S.Ct. at 424.

■ For the same reason, this Court affirms the award of $812 in attorney fees to appellee Stalnaker. As stated above, that award was made because the appellants' interference with Stalnaker's operations was, in part, wilful and wanton, i.e., beyond simply asserting their rights under the 1990 lease.

---

lessors precludes the appellants from asserting any free gas claim.

Appellant Stalnaker's contention, however, is without merit. As the August 19, 2003, order of the Circuit Court states: "Harry Vannoy, one of several lessors who executed the 1990 agreement, also owned the *surface* of the 50 acre tract, now owned by the [appellants], in 1990." (emphasis added). Mr. Vannoy was a predecessor in title to the appellants.

7. The 1990 lease stated that the lessee had access to the appellants' property:

for the purpose of mining and operating for oil and gas, and of building tanks, stations, power plants, water stations and structures thereon to take care of the said products, and of laying pipelines on, over and across the leased premises and other lands of lessors, for the purpose of conveying oil, gas, steam or water therein from and to wells and pipelines on the premises and on adjoining and adjacent farms, and rights of way for road ways over this and other land of lessors.

The record demonstrates that the appellants not only piled brush across Stalnaker's right-of-way, but directed profanity toward him and used a machete on at least one occasion to cause a leak in one of the pipelines. Syllabus point 9 of *Helmick v. Potomac Edison Company*, 185 W.Va. 269, 406 S.E.2d 700 (1991), *cert. denied*, 502 U.S. 908, 112 S.Ct. 301, 116 L.Ed.2d 244 (1991), holds: "As a general rule each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement except when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." Syl. pt. 5, *Collins v. City of Bridgeport*, 206 W.Va. 467, 525 S.E.2d 658 (1999). Accordingly, the Circuit Court acted within its discretion in awarding $812 in attorney fees to appellee Stalnaker.[8]

### III.

### CONCLUSION

Upon all of the above, therefore, the August 19, 2003, order of the Circuit Court of Calhoun County is reversed to the extent that it denied the claim of appellants Michael and Julie Flanagan for free surplus gas for one dwelling on their 50 acre tract. That order, and the order of December 18, 2003, are affirmed as to the denial of the appellants' claim for damages, the granting of nominal damages and injunctive relief to appellee Stalnaker and the award to Stalnaker of $812 in attorney fees. Accordingly, this action is remanded to the Circuit Court for further proceedings consistent with this opinion.

Reversed, in part, affirmed, in part, and remanded.

---

**8.** The December 18, 2003, order of the Circuit Court states in part:

[Stalnaker's] attorney seeks $6,820.68 in legal fees and costs. * * * Attorney fees will not be awarded regarding the contract dispute between the parties in this action since there is neither authority to award the fees nor bad faith by the [Flanagans]. However, an award of attorney fees based on the bad faith can be awarded due to the [Flanagans'] intentional

obstruction of [Stalnaker's] access to [his] leasehold estate. The award of attorney fees will be limited to the fees involved with the intentional obstruction due to the bad faith by the [Flanagans]. Therefore, it is Ordered that the [Flanagans] shall pay $812.00 in attorney fees attributable to [the] issue of [the Flanagans'] wilful and wanton conduct relating to denial of [Stalnaker's] right of access to [his] well site.