391 S.E.2d 367

**Robert C. BRIDGEMAN, John B. Bridgeman, and David F. Bridgeman, Executors of the Estate of Robert Bridgeman, Deceased,**

v.

**Barbara McKettrick BRIDGEMAN.**

No. 19045.

Supreme Court of Appeals of West Virginia.

March 22, 1990.

Clark B. Frame, Wesley Metheney, Wilson, Frame & Metheney, Morgantown, for Robert, John, David Bridgeman.

William E. Watson, Joyce D. Chernenko, William E. Watson & Associates, Wellsburg, G. Charles Hughes, G. Charles Hughes, L.C., Moundsville, for Barbara MeKettrick Bridgeman.

NEELY, Chief Justice:

The executors of the estate of the late Dr. Robert Bridgeman appeal the judgment of the Circuit Court of Wetzel County that the estate is liable for a lump-sum alimony award, $68,500, to Barbara McKettrick Bridgeman, who was divorced from Dr. Robert Bridgeman on 20 December 1988. Dr. Bridgeman died of cancer on 13 March 1989.

Barbara McKettrick met Robert Bridgeman in her hometown of Augusta, Georgia, in April 1982. Dr. Bridgeman was a dentist, practicing in New Martinsville, West Virginia. Mrs. McKettrick worked for a utility company in Augusta. Dr. Bridgeman was a widower, and Mrs. McKettrick was a divorcee. Mrs. McKettrick received alimony of $850 per month from her first husband, payable until Mrs. McKettrick's remarriage or the death of either.

Dr. Bridgeman courted Mrs. McKettrick ardently for eighteen months, from the time they met until their marriage on 2 July 1983. In the course of this courtship, Dr. Bridgeman wrote Mrs. McKettrick many letters containing boiler-plate language of undying devotion and the like: For example, "You really need someone to take care of you and look after you and I'm applying for that job," that he loved her so much it hurt, that she should "be his forever," and that he would "change the weath-

er" to please her. Mrs. McKettrick also wrote Dr. Bridgeman letters, but she destroyed those after they were married.

Some three weeks after the couple were married, Dr. Bridgeman told the new Mrs. Bridgeman that he had made a mistake in marrying her. Mrs. Bridgeman suggested marriage counselling, which Dr. Bridgeman refused. From August through October 1983, the couple continued to live together as man and wife, but did not spend much time alone together. There was a certain chill in their relations. On 2 November 1983, Dr. Bridgeman moved out of their house and served Mrs. Bridgeman with divorce papers. Dr. Bridgeman sued for divorce on the grounds of irreconcilable differences and mental cruelty. Mrs. Bridgeman later counterclaimed for divorce, maintenance, and alimony on the grounds of adultery.

Dr. Bridgeman had some sort of relations with another woman during the time leading up to his marriage, which relations resumed, at the latest, after he left his wife in November 1983. Apparently, Dr. Bridgeman telephoned the woman frequently during the marriage (as many as 140 times, sometimes very late at night). During his marriage, Dr. Bridgeman came to believe that the other woman was bearing his child. Dr. Bridgeman and the other woman both admitted that they resumed sexual relations in November 1983, during the time between Dr. Bridgeman's filing for divorce and Mrs. Bridgeman's counterclaim for divorce. It was disputed at trial whether Dr. Bridgeman and the other woman committed adultery while the Bridgeman marriage was more or less a going thing, that is, from July to November 1983.

The trial court found for Mrs. Bridgeman on her counterclaim for divorce and alimony. The court found that Dr. Bridgeman had committed adultery, which fault justified an award of alimony. The court found that no marital property had accumulated during the marriage, but ordered Dr. Bridgeman to pay Mrs. Bridgeman alimony in the lump sum of $68,500, in four quarterly installments, and attorney fees and other costs of $17,300. The court also held that Dr. Bridgeman's courtship letters to his future wife constituted an express contract to support Mrs. Bridgeman for life.

Dr. Bridgeman died shortly after the divorce decree was entered. Mrs. Bridgeman claimed her lump-sum alimony award as a debt of Dr. Bridgeman's estate. The estate prosecuted this appeal. Mrs. Bridgeman has filed a cross-appeal, asserting that undisputed evidence at trial showed her entitled to alimony of $127,000, twice what the trial court awarded her. We now dismiss the cross-appeal and affirm the judgement of the Circuit Court of Wetzel County.

■ Because Dr. Bridgeman died pending this appeal, the parties have raised the issue of abatement or survival of the claims in this case. This Court touched upon these issues in *Jones v. Jones*, 135 W.Va. 554, 64 S.E.2d 24 (1951), but we did not decide the issue because we disposed of the case on other procedural grounds. We now recognize that it is settled law in other jurisdictions, and so hold in West Virginia, that divorce actions abate at death except as to property rights. *See generally* Annotation, 33 A.L.R.4th 47 (1984). After the death of a party, no appeal lies to a divorce decree as such; the action abates at death. Thus we cannot entertain an appeal of the trial court's factual finding on the grounds for the divorce, *viz*, that Dr. Bridgeman committed adultery. An appeal does lie, however, as to attendant property rights, if those rights survive a party's death and are enforceable in favor of, or against, a party's estate. Thus, an alimony award that terminates on either party's death may not be appealed after a party's death; on the other hand, a lump-sum alimony award, as in this case, may be appealed after a party's death, because the award is chargeable against the estate. Appeal also lies against the trial court's finding that there was an express contract of support between the parties: Contract actions survive as a matter of law. *W.Va.Code*, 55–8–8 [1931].

■ It was error for the trial court to find an express contract in Dr. Bridge-

man's courtship letters to the future Mrs. Bridgeman. Contracts between fiances, conditioning in any way their impending marriage, are generally disfavored in this state as a matter of public policy. The "heart-balm" action (breach of promise of marriage), for example, has been abolished by statute. *W. Va. Code*, 56–3–2a [1969]. The major exception is a formal, valid prenuptial agreement, which may survive the marriage if substantively fair, entered into with full disclosure and deliberation by both parties, and so on. *W. Va. Code*, 48–2–1(b) [1986]; *Gant v. Gant*, 174 W.Va. 740, 329 S.E.2d 106, 53 A.L.R.4th 1 (1985). Otherwise, informal agreements or expectations of fiances are simply merged into the marriage itself. The marriage ceremony itself typically involves a mutual pledge of lifetime support and affection. In the order of service for the Solemnization of Matrimony, *The Book of Common Prayer* 301 (1928), each is directed to promise the other, "To have and to hold from this day forward, for better for worse, for richer for poorer, in sickness and in health, to love and to cherish, till death us do part, according to God's holy ordinance; and thereto I plight thee my troth." These promises, however explicit, are of course not enforced as a contract between strangers. Rather, the matter is governed by our statutes and decisional law, which recognize certain obligations of spousal support during marriage and at separation, with provisions for property division, maintenance, and alimony, as appropriate, in the event of divorce.

Despite the trial court's legal error in finding an express contract between the parties, the judgment as such—a lump-sum alimony award of $67,500 and other fees—was correct. The trial court took into account what Mrs. Bridgeman had given up in order to marry Dr. Bridgeman. She relinquished monthly alimony payments from her first husband, and she left her home and employment in Georgia to live with Dr. Bridgeman in West Virginia.

The facts of the case are unusual, but we are satisfied that the alimony award comports with the standards set forth in our statutes. *W. Va. Code*, 48–2–15(i) [1986], provides that, in determining whether to order alimony, and in what amount, "the court shall consider and compare the fault or misconduct of either or both of the parties and the effect of such fault or misconduct as a contributing factor to the deterioration of the marital relationship." *W. Va. Code*, 48–2–16(b)(16) [1984], provides that, in determining the amount of alimony to be ordered, the court shall consider, in addition to fifteen specific enumerated factors, "[s]uch other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of alimony."

These *Code* provisions are not a license for trial judges to engage in creative jurisprudence. Their purpose is to allow courts to grant relief appropriate to the facts of each marriage, which are often unique. As a general rule, a significant alimony award is more appropriate after a long marriage than after a short one. In long marriages, it often happens that one party foregoes education and employment, in effect permanently, in order to support the other's career and the couple's children. In short marriages that produce no children, conversely, each party's sacrifices tend to be short-lived and easily remedied. Under the facts of this case, however, the short length of the marriage itself operated as a detriment to Mrs. Bridgeman. She gave up a significant monthly alimony award from a prior marriage. At Dr. Bridgeman's insistence, Mrs. Bridgeman gave up her life in Georgia to move to West Virginia. Mrs. Bridgeman left behind her employment and her standing in the community. The marriage was so short, she did not have time to establish herself in her new home. Mrs. Bridgeman gave up her income entirely, and even though Dr. Bridgeman earned a handsome living as a dentist, there was no marital property accumulated that Mrs. Bridgeman could look to for sustenance as she picked up the pieces after the short marriage.

The trial court properly considered the unique situation of the parties in awarding alimony to Mrs. Bridgeman. We therefore

affirm the judgment of the Circuit Court of Wetzel County.

Affirmed.