588 S.E.2d 400

**Tammy ZIKOS, Administratrix of the Estate of Mary Alice Bayles Clark, Petitioner Below, Appellant**

v.

**Jack Ray CLARK, Respondent Below, Appellee**

No. 30843.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 26, 2003.

Decided April 18, 2003.

236

Patrick L. Cottrell, Charleston, West Virginia, Attorney for the Appellant.

Richard E. Boyle, Jr., Constance H. Weber, Erin R. Brewster, Jill D. Sinatra, Kay, Casto & Chaney, P.L.L.C., Charleston, West Virginia, Attorneys for the Appellee.

PER CURIAM:

This is an appeal by Tammy Zikos [1] (hereinafter "Appellant"), Administratrix of the Estate of Mary Alice Bayles Clark (hereinafter "decedent" or "Mrs. Clark"), from a final order of the Circuit Court of Kanawha County denying her motion to set aside a September 17, 1998, order which had set aside a 1991 divorce between the decedent and Mr. Jack Ray Clark (hereinafter "Appellee" or "Mr. Clark"). The Appellant contends that the lower court erred in setting aside the 1991 divorce order. Based upon our review of the arguments of counsel and the record in this matter, we reverse the order of the lower court, order reinstatement of the 1991 order of divorce, and remand for final calculation of alimony arrearages and outstanding issues of property distribution.

I. Factual and Procedural History

On August 15, 1991, a final divorce decree was entered by the lower court, based upon the recommendation of the family law master. Through this order, Mrs. Mary Alice

---

1. The court orders and briefs are inconsistent in their spelling of the Appellant's last name, some using Zikkos and some using Zikos. We rely upon the spelling utilized in the order of the lower court from which the Appellant presently appeals.

Bayles Clark and Mr. Jack Ray Clark were divorced, and Mrs. Clark was awarded possession of the marital home and $300.00 monthly alimony. On August 22, 1991, the Appellee filed a "Motion to Stay Enforcement of the Property Provisions in the Final Decree" based upon the fact that neither the Appellee nor his counsel had received notice of the final hearing before the family law master. Consequently, on August 27, 1992, the lower court entered an order temporarily staying the property provisions of the final divorce decree pending a ruling on the Appellee's untimely exceptions. Specifically, the language of that order provided as follows: "[I]t is hereby ORDERED that this matter be remanded to the Family Law Master for additional hearings and that the property settlement provisions of the final order of August 15, 1991, remain stayed pending further hearings."[2] This August 27, 1992, order does not indicate that the 1991 dissolution of the marriage is altered or affected in any manner by the stay of the property issues.

On October 7, 1994, Mrs. Clark initiated a contempt proceeding against the Appellee for failure to pay alimony. On January 4, 1995, the Appellee petitioned the lower court for a modification of alimony. In response, by order dated January 25, 1995, the lower court reaffirmed "the obligations as set out in the previous Order dated August 15, 1991," and directed judgment against the Appellee in the amount of $11,400.00 in alimony arrearage. By order dated February 28, 1995, the Appellee's request for modification of alimony was denied by the family law master. That denial was confirmed by the lower court on March 6, 1995.

On September 8, 1995, the lower court held a hearing on Mrs. Clark's petition for contempt. On September 17, 1998, the lower court, sua sponte, entered an order setting aside the August 15, 1991, divorce decree in its entirety. The September 1998 order was not signed by counsel for either party. On August 8, 2000, Mrs. Clark died intestate. The Appellee contended that he and the de-

cedent were still married at the time of her death, giving the Appellee rights of inheritance in the estate of the decedent.

On November 1, 2000, the Appellant, as administratrix of her mother's estate, filed a motion to set aside the lower court's September 1998 order. The Appellant also filed a Motion for Declaratory Relief, requesting that the lower court clarify the marital status of the parties at the time of the decedent's death and determine the accrued alimony due and payable by the Appellee to the decedent's estate. By order dated March 27, 2002, the lower court refused to set aside the September 1998 order, ruling that the decedent and the Appellee were still married at the time of the decedent's death and that the Appellee had a right of inheritance. The Appellant appeals that determination, asserting that the lower court erred in finding that no final order of divorce had been entered by the time of the decedent's death.

## II. Standard of Review

■ This Court expressed the appropriate standard of review in syllabus point four of *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996), as follows: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." This Court has also recognized that the "purpose of a declaratory judgment action is to resolve legal questions [and] a circuit court's ultimate resolution in a declaratory judgment action is reviewed *de novo*." *Cox v. Amick*, 195 W.Va. 608, 612, 466 S.E.2d 459, 463 (1995). The standing and jurisdictional issues raised in the case sub judice are legal matters subject to de novo review in this Court.

## III. Discussion

### A. Jurisdiction of Lower Court to Enter 1998 Order

■ The Appellee contends that the lower court acted properly and within its jurisdic-

---

2. Despite the lower court's grant of a stay permitting the Appellee an opportunity to adjudicate issues of entitlement to equitable distribution of the parties' assets, the Appellee did not avail himself of that opportunity.

tion in 1998 by setting aside a 1991 dissolution of marriage. This contention somewhat paradoxically assumes that an individual who had been divorced for seven years, with only property and alimony issues still pending before the court, would, upon the death of his ex-spouse, maintain that the divorce had never been accomplished. The Appellee would assert that the litany of lower court orders from 1991 through 1998 reveals an intention to void the marriage dissolution by entering an order staying the property issue in 1992, in response to the Appellee's "Motion to Stay Enforcement of the Property Provisions of the Final Decree," or, at the very least, that no dissolution was ever accomplished due to the partial stay of the final order entered in 1992.

■ We disagree with the Appellee's characterization of the impact of lower court orders in this matter. This Court has consistently observed that a circuit court does not infinitely retain subject matter jurisdiction over a divorce case. As this Court explained in *State ex rel. Watson v. Rodgers*, 129 W.Va. 174, 39 S.E.2d 268 (1946), circuit courts have no inherent powers in divorce cases; rather, the circuit court has only the specified statutory powers assigned to it in such matters. *Id.* at 176, 39 S.E.2d at 269.[3] In *Crouch v. Easley*, 119 W.Va. 208, 192 S.E. 690 (1937), this Court specified that in a divorce suit which does not involve minor children, maintenance or property rights, a decree of divorce a vinculo terminates the suit because the marital relation is the only subject before the court. In syllabus point two of *Segal v. Beard*, 181 W.Va. 92, 380 S.E.2d 444 (1989), this Court again addressed this issue as follows: "A circuit court lacks jurisdiction under *W.Va.Code*, 48-2-15(e) [1986] to modify a divorce decree when the modification proceeding does not involve alimony, child support or child custody."

The issue of continued subject matter jurisdiction was discussed by this Court in *State ex rel. Ravitz v. Fox*, 166 W.Va. 194,

273 S.E.2d 370 (1980), wherein this Court reasoned as follows:

> We note initially that the relator does not dispute subject matter jurisdiction and recognizes that the circuit court originally granting a divorce is vested with continuing subject matter jurisdiction under W.Va.Code § 48-2-15 to modify or alter its original order as to alimony and child support, as the altered circumstances of the parties and the needs of the children may require. *See, e. g.,* Syl. pt. 6, *In re Estate of Hereford,* 162 W.Va. 477, 250 S.E.2d 45 (1978) (child support subject to continuing judicial modification); *State ex rel. Trembly v. Whiston,* 159 W.Va. 298, 220 S.E.2d 690 (1975) (child custody agreement merged in decree did not preclude change in custody). Although the divorce portion of the decree becomes final, we recognized in *Acord v. Acord,* 164 W.Va. 562, 264 S.E.2d 848 (1980), that the circuit court has continuing jurisdiction to reopen the judgment and modify the decree as to other matters pursuant to the provisions of W.Va.Code § 48-2-15.

166 W.Va. at 197, 273 S.E.2d at 372 (emphasis supplied).

It is the dissolution of the marriage which is the primary focus of the divorce action. As the Colorado court observed in *In re Marriage of Connell,* 870 P.2d 632 (Colo.Ct. App.1994), "[T]he court's power to issue orders relative to property and support is merely incidental to the primary object of dissolving the parties' marital status." Id. at 633. In that vein, the Colorado court, in *Hubbard v. District Court,* 192 Colo. 98, 556 P.2d 478 (1976), addressed the issue of a motion for a new trial filed regarding only a portion of the various issues involved in the underlying divorce action and held that the divorce decree was final to terminate the parties' marital status where the husband died after the district court granted a new trial on the permanent orders, but not on the

---

3. For example, West Virginia Code § 48-8-103(b) (2001), regarding the specific issue of spousal support, provides as follows:

> At any time after the entry of an order pursuant to the provisions of this article, the court may, upon motion of either party, revise or alter the order concerning the maintenance of the parties, or either of them, and make a new order concerning the same, issuing it forthwith, as the altered circumstances or needs of the parties may render necessary to meet the ends of justice.

decree of dissolution itself. The *Hubbard* court explained:

> [W]hen the parties challenge only the permanent orders relating to marital property in their motions for a new trial, that portion of the decree dissolving their marriage remains unaffected and becomes final at the expiration of the time within which the parties can move for a new trial on that issue. In this case, the district court no longer had jurisdiction to set aside the dissolution decree after the parties failed to file a timely motion for a new trial on whether the marriage was irretrievably broken.

*Id.* at 481 (footnote omitted).[4]

■ Reviewing courts have also recognized that no violation of Rule 54(b) of the Rules of Civil Procedure occurs and no question of the finality of an order is raised in a divorce action where the trial court leaves an issue unresolved but nevertheless issues a final decree. *See Garabedian v. Garabedian,* 1990 WL 179592, *2 (Ohio App. 12 Dist.).[5] In *Dixon v. American Indus. Leasing Co.,* 157 W.Va. 735, 205 S.E.2d 4 (1974), applicable only by analogy, this Court found as follows as syllabus point six:

> Where a court, by an order in the first instance, disposes of multiple claims and adjudicates all controversies, but a party by a Rule 59(e) R.C.P. motion asks the court to alter or amend the order as to one of the claims, but not the other, the Rule 59(e) motion extends the time of finality of

the order as it relates to the claim contained in the 59(e) motion until the Rule 59(e) motion is determined, but the order in the first instance is final as to the other claims determined therein, and the time for appeal as to that claim runs from the entry of the order in the first instance.

An evaluation of the marital status of parties subsequent to the death of one of the ex-spouses was addressed in *Estate of Burford v. Burford,* 935 P.2d 943 (Colo.1997). A divorce had been granted prior to the husband's death, but financial matters remained unresolved in the dissolution proceedings at the time of the husband's death. The Colorado court held that "the decree of dissolution dissolved the marriage of the parties even though the decree was not final for purposes of appellate review." *Id.* at 955. The court further explained:

> The marital status of the parties was dissolved; the parties were no longer husband and wife. Thereafter, when the husband died before the date of the permanent orders hearing, the dissolution action did not abate, and the district court properly maintained jurisdiction over the marital estate to conduct hearings to resolve financial matters raised in the dissolution proceedings. The probate court was correct in precluding the wife's claim in the husband's estate as a surviving spouse.

*Id.*

In the present case, we conclude that the lower court acted within its authority in 1992

---

**4.** In *Devine v. Devine,* 812 So.2d 1278 (Ala.Civ. App.2001), the court addressed the need for finality of the dissolution of the marriage where one party files for bankruptcy protection, observing as follows: "Thus, the filing of a petition for bankruptcy protection stays proceedings in a divorce action as it pertains to the division of property within the debtor's estate, but it does not operate as a stay as to the dissolution of the marriage itself or the award of child support or alimony. *See* 11 U.S.C. § 362." *Id.* at 1280–81; *see also Davis v. Davis,* 97 Md.App. 1, 627 A.2d 17, 25 (1993) ("The parties' main objective was to obtain a divorce; the award of alimony and counsel fees was incidental to the divorce action, and the fact that those issues were reserved for later determination did not have the effect of rendering the divorce decree other than final").

**5.** Rule 54(b) of the West Virginia Rules of Civil Procedure provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

by granting a partial stay of the 1991 final order, pursuant to the Appellee's request for a stay on the property division issues. Through that action, however, the lower court retained jurisdiction of only the property issues which had been stayed. The underlying marital dissolution was not challenged; nor was a stay requested or granted on that issue. The partial stay, relating to property matters, had no effect upon the actual dissolution of the marriage between the parties. The marriage was dissolved by the 1991 order; only property issues remained unresolved. While the issues of property distribution had been left open and alimony arrearages had been contentiously debated, the validity of the actual dissolution of the marriage was never contested. It was settled by the 1991 order; the 1992 order did not affect the dissolution of the marriage; and the issue was not subject to resurrection by the lower court in 1998. We find that the 1998 order was void [6] and that the 1991 order declaring the dissolution of the marriage was in effect at the time of Mrs. Clark's death in 2000.

### B. Appellant's Standing

■ The Appellee has also asserted that the Appellant lacks standing to litigate this action. The Appellee suggests that the divorce action "ceased to exist or 'abated' upon the decedent's death ...." We find that our holding in *Bridgeman v. Bridgeman*, 182 W.Va. 677, 391 S.E.2d 367 (1990), supports the Appellant's standing and permits this action by the Appellant. In *Bridgeman*, executors of the estate of the late Dr. Robert Bridgeman appealed from a judgment which granted a divorce between Dr. Bridgeman and his wife and awarded lump-sum alimony to the wife. In syllabus point one of *Bridgeman*, this Court stated that "[d]ivorce actions, and appeals therefrom, abate at the death of a party, except as to property rights." The *Bridgeman* Court expressly stated that "[a]n appeal does lie, however, as to attendant property rights, if those rights survive a party's death and are enforceable in favor of, or against, a party's estate." *Id.* at 679, 391 S.E.2d at 369.

■ In assessing the Appellee's claim that his daughter, as administratrix of her mother's estate, does not have standing to bring this action and litigate the issue of the validity of the 1998 order, we must emphasize that, quite to the contrary, the Appellant is obligated to initiate such action through her fiduciary duties as administratrix of Mrs. Clark's estate.[7] In syllabus point one of *Latimer v. Mechling*, 171 W.Va. 729, 301 S.E.2d 819 (1983), this Court explained:

The personal representative of the estate of a deceased acts in a fiduciary capacity. His duty is to manage the estate under his control to the advantage of those interested in it and to act on their behalf. In the discharge of this duty, the executor or administrator of a deceased's estate is held to the highest degree of good faith and is required to exercise the ordinary care and reasonable diligence which prudent persons ordinarily exercise, under like circumstances, in their own personal affairs.

While it would have been preferable for the Appellant, as administratrix, to have initiated

6. As this Court noted in *Perkins v. Hall*, 123 W.Va. 707, 17 S.E.2d 795 (1941), " 'A void judgment is no judgment at all, but a mere nullity and may be assailed in any court, anywhere, whenever any claim is made or rights asserted under it.' 6 Digest of Virginia and West Virginia Reports, 332." *Id.* at 721, 17 S.E.2d at 803.

7. The obligation of a legal representative of an estate to recover arrearages of alimony was fully evaluated in *Abel v. Abel*, 1997 WL 407883 (Conn.Super.1997). In assessing this issue, the *Abel* court observed:
   [O]ther jurisdictions have held that the legal representative of a deceased spouse could recover for any arrearages of alimony or support due at the time of the spouse's death. *Dalton*

*v. Dalton, supra*[1997 WL 133458 (1997)] citing *Greer v. Greer*, 110 Colo. 92, 130 P.2d 1050, (Colo.1942) (deceased plaintiff's estate could recover arrearages of alimony); *Siver v. Shebetka*, 245 Iowa 965, 65 N.W.2d 173 (Iowa 1954) (arrearages in alimony becomes the property of a spouse's estate and pass to her personal representative); *Beyerlein v. Ashburn*, 334 Mich. 13, 53 N.W.2d 666 (Mich.1952) (right to collect unpaid arrearages of alimony does not abate; and *Stillman v. Stillman*, 99 Ill. 196, 39 Am. Rep. 21, 24 (Ill.1881) (personal representatives entitled to recover any unpaid portion of sum remaining unpaid at spouses' death).
*Id.* at *2.

a separate declaratory judgement action to reach issues controlling this case, her motion for declaratory relief may be viewed by this Court as an attempted supplemental or amended complaint in the underlying action. We decline to delay the resolution of these pivotal issues on technical procedural grounds, particularly because all necessary parties appear to be before the court. We therefore conclude that pursuit of these matters within the context of the underlying divorce action is not destructive to the Appellant's claims.

Based upon the foregoing, we reverse the order of the lower court and remand for determination of alimony arrearages to which the estate of Mrs. Clark is entitled.

Reversed and Remanded with Directions.

Starcher, C.J., dissented and filed opinion in which Davis, J., joined.

Albright, J., concurred in judgment and filed opinion.