# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**September Term 2017**

_____

No. 16-0906

_____

FILED
**September 21, 2017**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**JEANNETTE WAKIM, as personal representative
of the Last Will and Testament of Lawrence J. Belt,
Defendant Below, Petitioner**

**v.**

**CHRISTOPHER PAVLIC, as personal representative
of the Last Will and Testament of Lila Belt,
Plaintiff Below, Respondent**

_____

**Appeal from the Circuit Court of Ohio County
The Honorable Ronald E. Wilson, Judge
Civil Action No. 13-C-89**

_____

**REVERSED AND REMANDED**

_____

**Submitted: September 13, 2017
Filed: September 21 , 2017**

Robert G. McCoid, Esq.
McCamic, Sacco & McCoid, PLLC
Wheeling, West Virginia
Paul J. Harris, Esq.
Shawn L. Fluharty, Esq.
Harris Law Offices
Wheeling, West Virginia
**Counsel for the Petitioner**

Elgine Heceta McArdle, Esq.
McArdle Law Office
Wheeling, West Virginia
**Counsel for the Respondent**

**JUSTICE KETCHUM delivered the Opinion of the Court.**

# SYLLABUS BY THE COURT

1. "A joint tenancy is created in money deposited in a bank in the names of two or more persons, 'in form to be paid to either,' under Code, 31-8-23 [currently *W.Va. Code*, 31A-4-33], and the same may be withdrawn by any of the persons so named.  In the event of the death of one or more of such depositors, a sole survivor is entitled to the entire amount remaining in such deposit."  Syl., *Lett v. Twentieth Street Bank*, 138 W.Va. 759, 77 S.E.2d 813 (1953).

2. "Prior to the death of a donor depositor, a rebuttable presumption exists under the provisions of Code, 1931, 31A-4-33, as amended, that the ownership of the funds is joint, a presumption which may be overcome by competent evidence."  Syl. pt. 3, *Dorsey v. Short*, 157 W.Va. 866, 205 S.E.2d 687 (1974).

**Justice Ketchum**:

This appeal concerns the disposition of funds withdrawn from joint bank accounts owned by Lawrence Belt and Lila Belt during their marriage. The funds were withdrawn from the joint accounts by Lawrence. Several months after the withdrawals, Lila filed for divorce but died while the divorce action was pending. The divorce action was dismissed with prejudice and without any rulings regarding any marital property. Lawrence died thereafter.

Lawrence's estate, through his executrix Jeannette Wakim (the petitioner), and Lila's estate, through her executor Christopher Pavlic (the respondent), are now fighting over ownership of the funds Lawrence withdrew from the joint accounts before Lila filed for divorce. The funds are currently in an IOLTA account held on Lawrence's behalf.

The Circuit Court of Ohio County split the funds in half, not on the basis of divorce law, but simply to prevent the perceived unjust enrichment of Lawrence's estate. Wakim, as executrix of Lawrence's estate, appeals to this Court from the circuit court's decision.

We reverse the circuit court and conclude that Lawrence had the right to withdraw the funds from the joint accounts by virtue of *W.Va. Code*, 31A-4-33 [1994], which states that

1

bank deposits may be paid to any named depositor, or the survivor of them, of an account held in joint tenancy. Here, the bank accounts were joint accounts with the right of survivorship, and we note that withdrawals were made by both Lawrence and Lila, independently, during the marriage. The funds withdrawn by Lawrence during the marriage became the sole property of Lawrence upon their withdrawal.

The circuit court's ruling splitting the funds in half and granting summary judgment in favor of Lila's estate is reversed; judgment is entered in favor of Wakim as executrix of Lawrence's estate; and this action is remanded with directions to enter an order releasing the funds in the IOLTA account to Lawrence's estate.

## I. Factual Background

Lawrence and Lila were married on November 29, 1975. Although no children were born of the marriage, Lawrence had at least one child from a previous marriage and two granddaughters, Jennifer Swiger and petitioner Wakim. Lila had three children from a previous marriage: respondent Christopher Pavlic, Mark Pavlic and Karen Cutter. Lawrence and Lila appeared to be financially secure during their 36 year marriage.

On October 5, 2006, Lila executed a Will in which she devised and bequeathed her entire estate to Lawrence. She named as co-executors Christopher Pavlic and Mark Pavlic.

2

The Will provided that, if Lawrence were to predecease Lila, her estate would go to Christopher and Mark, share and share alike. Although Lila's daughter, Karen Cutter, was not included in the Will, Lila executed a document, also dated October 5, 2006, stating that Karen is mentally incompetent and providing that, if Lawrence is deceased, the co-executors would have the discretion to include Karen in the proceeds of Lila's estate.

On September 12, 2008, Lawrence executed a Will in which he devised and bequeathed his entire estate to Lila. Lawrence named Lila as executrix. The Will provided that, if Lila were to predecease Lawrence, his estate would go to his granddaughters, petitioner Wakim and Jennifer Swiger, share and share alike. Wakim was named as an alternate executrix.

## A. The Joint Accounts and Withdrawals

During the marriage, Lawrence and Lila opened a number of joint bank accounts between 1999 and 2006 in their names with the right of survivorship. In June 2009, Lila was diagnosed with cancer. Thereafter, on July 30, 2010, Lila opened two additional joint accounts: the first in the names of Lawrence, Lila or Mark Pavlic and the second in the names of Lawrence, Lila or respondent Christopher Pavlic.

In July 2011, Lila learned that her cancer was terminal. On July 15, 2011, Lawrence, age 95, withdrew $242,773.62 from the joint accounts and placed the funds in new accounts opened in his name only at the same banking institutions. Petitioner Wakim, Lawrence's executrix, asserts that Lawrence made the withdrawals to protect the assets upon learning that Lila had transferred at least $68,819.30 to respondent Pavlic without Lawrence's knowledge and consent. Wakim contends that Lila, in her 80s, was under the undue influence of respondent Pavlic. Conversely, Pavlic contends that Lawrence was under the undue influence of petitioner Wakim.[1]

## B. The Divorce Action and New Will

On October 17, 2011, Lila filed a divorce action in the Family Court of Ohio County on the ground of irreconcilable differences.[2] During the divorce proceedings, Lila filed a motion for emergency, temporary relief alleging that Lawrence had removed in excess of $200,000.00 in marital assets from the joint accounts. Lila sought an order directing Lawrence to transfer half of the funds to Lila.

---

[1] The circuit court found that Wakim and Pavlic were well aware of Lawrence and Lila's respective ages, Lawrence's life expectancy, and Lila's terminal illness.

[2] The action was styled *In re: The Marriage of Lila L. Belt v. Lawrence John Belt*, Civil Action No. 11-D-367 (Family Court of Ohio County - 2011).

Later, on October 21, 2011, Lila executed a new Will revoking her 2006 Will and disinheriting Lawrence. The new Will stated: "I am currently married to Lawrence J. Belt, but have retained an attorney to file for divorce. I leave Lawrence J. Belt nothing. I disinherit him entirely." The new Will gave $1.00 to Mark Pavlic and devised and bequeathed the remainder of the estate to respondent Christopher Pavlic. Respondent Pavlic was designated as sole executor. Although the new Will provided remote contingencies for minors or incompetents, the new Will made no reference to Lila's daughter, Karen Cutter.

The Family Court entered a temporary order on February 9, 2012, directing that Lawrence place the funds he withdrew in escrow. As a result, the funds withdrawn by Lawrence from the joint bank accounts were deposited in an IOLTA account maintained by an attorney on Lawrence's behalf.[3] Soon after, on February 21, 2012, Lila, age 84, died while the divorce action was pending. Upon the filing of a suggestion of death, the Family Court entered an order on March 28, 2012, dismissing the divorce action "with prejudice." The Family Court made no rulings regarding the money Lawrence withdrew from the joint bank accounts prior to dismissing the divorce action.

---

[3] *See* Rule 1.15. of the *West Virginia Rules of Professional Conduct* regarding the safeguarding of client property in an IOLTA account ("Interest on Lawyers Trust Account").

## II. Procedural Background

In March 2013, Pavlic, as Lila's executor under the new Will, filed a declaratory judgment action in the Circuit Court of Ohio County.[4] Pavlic alleged that Lawrence, under the undue influence of petitioner Wakim, "transferred, dissipated, or otherwise diminished" funds belonging to the marital estate, thereby denying Lila access thereto.

Pavlic further alleged that, in view of Lila's new Will disinheriting Lawrence, Lawrence's share of the funds would be limited to his elective share of Lila's estate as determined by *W.Va. Code*, 42-3-1 [1995]. That statute provides for a surviving spouses's right to an elective share, calculated in proportion to the length of the marriage, against disinheritance under the decedent's Will. The parties agree that Lawrence's elective share would be 50%.[5] Consequently, Pavlic alleged that Lawrence's remedy upon being

---

[4] The complaint was styled *Christopher Pavlic, as personal representative of the Last Will and Testament of Lila L. Belt v. Lawrence John Belt, an individual, and Paul Harris, as trustee for monies owned by Lawrence John Belt located within a client Trust Account, and Jeannette Wakim, an individual*, Civil Action No. 13-C-89 (Ohio County - 2013). The record indicates that Wakim, individually, was dismissed from the action.

[5] *W.Va. Code*, 42-3-1(a) [1995], states in part:

> The surviving spouse of a decedent who dies domiciled in this State has a right of election, against either the will or the intestate share, under the limitations and conditions stated in this part, to take the elective-share percentage of the augmented estate, determined by the length of time the spouse and the decedent were married to each other, in accordance with the following schedule: * * * 15 years or more - 50% of the augmented

disinherited would be through probate court, rather than claiming ownership of the funds through his prior unilateral transfers from the joint bank accounts. Pavlic, therefore, asked the circuit court to impose a constructive trust on the funds held in the IOLTA account pending the outcome of probate proceedings regarding Lila's new Will.

Lawrence filed a motion to dismiss which alleged that, because the divorce action was dismissed with prejudice, the current action is barred by collateral estoppel. In response, Pavlic asserted that the current action, which challenges the validity of Lawrence's transfers from the joint bank accounts, seeks declaratory relief rather than relief under any domestic relations statute, and, therefore, collateral estoppel does not apply. The circuit court agreed with Pavlic and denied the motion to dismiss. Lawrence then filed an answer alleging that, as an owner of the joint bank accounts, he was entitled to all of the funds he withdrew by operation of law.[6]

---

estate.

[6] Lawrence also filed a counterclaim and alleged that Lila lacked the mental capacity in October 2011 to form a testamentary intent to execute the new Will. Therefore, according to Lawrence, the new Will should be set aside and Lila's estate probated under her 2006 Will in which she devised and bequeathed her entire estate to Lawrence. In support, Lawrence alleged (1) that Lila's new Will was the result of Pavlic's undue influence; (2) that Pavlic assumed responsibility for Lila when she became ill with cancer but failed to provide a clean and safe environment for her care; and (3) that Lila had transferred significant funds to respondent Pavlic, Mark Pavlic, and their children.

7

In December 2013, the circuit court placed a temporary constructive trust on the funds placed in the IOLTA account until the resolution of Lila's estate in probate. Thereafter, Pavlic filed a motion for summary judgment which alleged that Lila's estate is entitled to the funds in the IOLTA account, subject to Lawrence's 50% elective share.

On October 29, 2015, the circuit court granted Pavlic's motion for summary judgment and confirmed the constructive trust imposed on the funds in the IOLTA account. The circuit court concluded that, at the time of Lawrence's withdrawals on July 15, 2011, the funds would have been marital assets in the divorce action that had been previously dismissed without any ruling on the parties' property, including the joint bank accounts. The circuit court determined that 50% of the funds in an amount to be determined belonged to Lila's estate, with the remaining 50% constituting Lawrence's elective share of Lila's estate under *W.Va. Code*, 42-3-1 [1995].

---

Lawrence alternatively alleged in the counterclaim that, if Lila's new Will is found to be valid and enforceable, that Lawrence be permitted to execute his right to his elective share pursuant to *W.Va. Code*, 42-3-1 [1995]. In that regard, Lawrence emphasized that respondent Pavlic had already received a legacy from Lila's estate because of the funds transferred to Pavlic prior to Lila's death.

The circuit court ruled that neither Lila's 2006 Will nor the new 2011 Will were relevant to the issue of Lawrence's withdrawals from the joint accounts. We agree. The current declaratory judgment action concerns the withdrawn funds presently in the IOLTA account. As discussed herein, Lila's new Will and Lawrence's elective share are not dispositive in this appeal.

8

The circuit court found no evidence of undue influence but noted that, in the divorce action, Lila raised the issue of ownership of the funds Lawrence had withdrawn. The circuit court stated that the type of joint accounts involved here "are opened with the intention that they will jointly benefit both the husband and the wife, and with a further assumption that when the joint accounts are opened it is not the intention of either spouse to unjustly enrich the other or to deprive the child of either spouse their fair share of their parents' money."

On March 2, 2016, the circuit court entered an order finding the total funds withdrawn to be $242,773.62 and awarding $121,386.81 to Lila's estate and $121,386.81 to Lawrence. Lawrence died on April 1, 2016. The circuit court entered an order on August 29, 2016, clarifying its prior rulings, therein stating that both sides were to receive $121,386.81, "without any further addition to Lawrence or any reduction to Lila's estate." Lawrence's executrix, petitioner Wakim, appeals to this Court from the rulings of the circuit court.

### III. Standards of Review

Pursuant to Rule 56 of the *West Virginia Rules of Civil Procedure*, a motion for summary judgment may be filed in a declaratory judgment action. A declaratory judgment thus entered is reviewed by this Court *de novo*. Syllabus point 3 of *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995), holds: "A circuit court's entry of a declaratory judgment is

9

reviewed *de novo*." *Accord* syl. pt. 1, *Flanagan v. Stalnaker*, 216 W.Va. 436, 607 S.E.2d 765 (2004).

In *Cox*, this Court observed that, because the purpose of a declaratory judgment action is to resolve legal questions, "a circuit court's ultimate resolution in a declaratory judgment action is reviewed *de novo*; however, any determinations of fact made by the circuit court in reaching its ultimate resolution are reviewed pursuant to a clearly erroneous standard." 195 W.Va. at 612, 466 S.E.2d at 463. *See W.Va. Code*, 55-13-7 [1941] (Orders, judgments and decrees entered under the *West Virginia Uniform Declaratory Judgments Act* "may be reviewed as other orders, judgments and decrees.").

## IV. Discussion

### A. The Terminated Divorce Action

The circuit court, in the declaratory judgment action, placed a constructive trust on the IOLTA account and awarded half of the funds to Lila's estate and half of the funds to Lawrence's estate. The circuit court reasoned that the funds were marital assets and, without the constructive trust, Lawrence would have been unjustly enriched by the withdrawals. *See Annon v. Lucas*, 155 W.Va. 368, 382, 185 S.E.2d 343, 352 (1971) ("A constructive trust is substantially an appropriate remedy against unjust enrichment.").

10

Petitioner Wakim contends that, in awarding Lila's estate half of the funds, the circuit court committed error by posthumously reviving the divorce action even though no divorce was granted and no order was entered regarding the property rights of the parties. Wakim asserts that Lawrence, as an owner of the joint accounts, was entitled to withdraw the funds by operation of law. Moreover, Lawrence's complete ownership of the funds was confirmed by his survivorship upon Lila's death. Wakim further asserts that Lila had also withdrawn funds from the accounts and that Lawrence's withdrawals were made to protect the assets when he learned that Lila had transferred at least $68,819.30 to Pavlic.[7] Pavlic, however, emphasizes that Lawrence and Lila agreed during the divorce action that no monies would be removed from the IOLTA account without the other's consent, and, as such, a constructive trust was warranted which ultimately resulted in an equitable distribution of $121,386.81 to each estate in the declaratory judgment action.

It is well established that actions for divorce are personal and terminate upon the death of a party. Only those property rights finally adjudicated in a family court decree survive the divorce. In syllabus point 1 of *Bridgeman v. Bridgeman*, 182 W.Va. 677, 391 S.E.2d 367 (1990), this Court held: "Divorce actions, and appeals therefrom, abate at the death of a

---

[7] In an affidavit dated December 4, 2014, Wakim stated that Lawrence left some funds in the accounts for the care and maintenance of Lila and, in addition, "made monthly contributions to her care, as well as paid Lila Belt's medical bills."

11

party, except as to property rights." *Accord* syl. pt. 4, *Zikos v. Clark*, 214 W.Va. 235, 588 S.E.2d 400 (2003). In *Bridgeman*, a divorce decree was entered, and the husband was ordered to pay alimony in the lump sum of $68,500.00, plus attorney fees and costs. The husband died shortly after the divorce decree was entered. Nevertheless, this Court in *Bridgeman* affirmed the ruling of the circuit court that the alimony award was chargeable against the husband's estate.[8] Similarly, in *Zikos v. Clark* this Court remanded an action to the lower court for a determination of alimony arrearages payable to the wife's estate. In *Zikos*, the wife died after the entry of the divorce decree which directed the husband to pay alimony in the amount of $300.00 per month.

The circumstances here are very different. Lila died during the divorce proceedings, and no divorce decree was entered. More importantly, no marital or individual property rights were adjudicated in the divorce proceeding before it was dismissed. Although the funds Lawrence withdrew were placed in the IOLTA account pending the outcome of the divorce action, a constructive trust on the funds was not contemplated until the filing of the current declaratory judgment action long after Lila died and the divorce action was terminated. The constructive trust was imposed in the declaratory judgment action pursuant

---

[8] *See Whitlock ex rel. Pack v. Whitlock*, 2013 WL 2462167 (W.Va. 2013) (Under *Bridgeman*, an action may be maintained for "attendant property rights, if those rights survive a party's death and are enforceable in favor of, or against, a party's estate.").

to the circuit court's December 2013 and October 2015 orders. The circuit court then awarded half the funds to each estate on the basis of unjust enrichment, not on the basis of divorce law. *See*, *e.g.*, *W.Va. Code*, 48-5-508 [2001] (authorizing a constructive trust to preserve property during pendency of divorce action).

This Court concludes that the divorce action is of no moment in resolving the issue of Lawrence's withdrawals from the joint bank accounts. The circuit court committed error to the extent it posthumously revived the divorce action in its rulings below. *See* Francis M. Dougherty, Annotation, *Effect of Death of Party to Divorce Proceeding Pending Appeal or Time Allowed for Appeal*, 33 A.L.R.4th 47 § 2 (1984) (Generally, a cause of action for divorce is purely personal, and "if an action for a divorce is commenced, and one of the parties dies thereafter but before the entry of the final decree, the action abates.").

Moreover, the imposition of the constructive trust was unwarranted. The record reveals, and the circuit court specifically found, no undue influence. Nor does the record indicate that Lawrence or Lila lacked the mental capacity to make their respective withdrawals from the joint accounts or to make and execute their Wills. Furthermore, the record does not show that Lawrence diminished the withdrawn funds for his personal use. To the contrary, petitioner Wakim maintains that Lawrence left some funds in the accounts for Lila's care, made later contributions for Lila's benefit, and paid her medical bills. *See*

13

n. 7, *supra.* In *In Re: Shiflett*, 200 W.Va. 813, 821 n. 28, 490 S.E.2d 902, 910 n. 28 (1997), we observed that a constructive trust is an implied trust and arises by operation of law "when equity so demands." In the current matter, the circuit court overreached its authority in imposing the constructive trust on the IOLTA account.[9]

## B. The Joint Accounts and Withdrawals

During the marriage, Lawrence and Lila opened a number of joint accounts with the right of survivorship. On July 15, 2011, Lawrence withdrew funds from the joint accounts and opened new accounts in his name only at the same banking institutions. According to petitioner Wakim, Lawrence made the withdrawals to protect the assets upon learning that Lila transferred at least $68,818.30 to Pavlic without Lawrence's knowledge and consent.

Regardless of Lawrence's intent, or Lila's intent, the withdrawals in question made by Lawrence, were governed by *W.Va. Code*, 31A-4-33(b) [1994], which states:

> When a deposit is made by any person in the name of such depositor and another or others and in form to be paid to any one of such depositors, or the survivor or survivors of them, such deposit, and any additions thereto, made by any of such persons, upon the making thereof, shall become the

---

[9] *See* 76 Am. Jur.2d *Trusts* § 169 (2016): "[T]he doctrine of constructive trust does not allow a court to disregard existing legal rights merely to fashion a result that it deems fairer than that created by the parties. 'Unfairness' is not reason enough to impose a constructive trust."

property of such persons as joint tenants. All such deposits, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to any one of them during the lifetime of them, or to the survivor or survivors after the death of any of them.

In a sworn statement, bank employee Dorothy Billetter indicated in layman's terms that the joint accounts were in a form which permitted either Lawrence or Lila to transfer money or redeem certificates of deposit, "whatever they wanted to do."

The syllabus point in *Lett v. Twentieth Street Bank*, 138 W.Va. 759, 77 S.E.2d 813 (1953), holds:

A joint tenancy is created in money deposited in a bank in the names of two or more persons, "in form to be paid to either," under Code, 31-8-23 [currently *W.Va. Code*, 31A-4-33], and the same may be withdrawn by any of the persons so named. In the event of the death of one or more of such depositors, a sole survivor is entitled to the entire amount remaining in such deposit.

*See Koontz v. Long*, 181 W.Va. 800, 802, 384 S.E.2d 837, 839 (1989) (citing *Lett* and noting that "when a party's name is added as a joint tenant with the right of survivorship on a bank or like account, there is a presumption that the person adding the joint tenant's name intends to make a gift of the funds in the account.").

15

In syllabus point 3 of *Dorsey v. Short*, 157 W.Va. 866, 205 S.E.2d 687 (1974), we stated: "Prior to the death of a donor depositor, a rebuttable presumption exists under the provisions of Code, 1931, 31A-4-33, as amended, that the ownership of the funds is joint, a presumption which may be overcome by competent evidence." *Accord* syl. pt. 2, *McComas v. McComas*, 178 W.Va. 133, 358 S.E.2d 217 (1987).

There is no evidence that Lawrence, age 95, withdrew the funds in contemplation of divorce or that he depleted the funds thereafter. With relatively small deductions, the funds in question were transferred intact from the joint bank accounts to Lawrence's personal accounts and then to the IOLTA account. Nor did Lawrence's relationship to Lila reach the level of a fiduciary duty with respect to her illness. As the circuit court suggested, the joint bank accounts were opened for the benefit of both Lawrence and Lila, and Pavlic assumed responsibility for Lila as her illness progressed. Denying unjust enrichment, petitioner Wakim asserts on Lawrence's behalf that Pavlic had already received substantial funds through transfers by Lila.[10]

---

[10] Although Lawrence gave Wakim a power of attorney in 2011, it played no part regarding Lawrence's July 15, 2011, withdrawals from the joint accounts. In the October 29, 2015, order, the circuit court stated: "The power of attorney held by Jeannette Wakim is not relevant to this controversy because Lawrence Belt was the person who transferred all of the money from the joint tenancy account of Lila Belt and Lawrence Belt to his personal account."

Pursuant to *W.Va. Code*, 31A-4-33(b) [1994], the funds in the joint bank accounts were non-probate assets jointly owned by Lawrence and Lila, and Lawrence had a right to withdraw the funds on July 15, 2011, as a matter of law. Lila's withdrawals from the joint accounts were also proper as a matter of law. Upon her death on February 21, 2012, Lawrence was entitled to the balance of the funds left in the joint accounts by way of survivorship. The funds are not part of Lila's Estate. We find no evidence, including the terminated divorce action or Lila's new Will, which alters this result.

### V. Conclusion

The withdrawals from the joint accounts by both Lawrence and Lila during the marriage were proper under *W.Va. Code*, 31A-4-33 [1994], pertaining to joint bank accounts with the right of survivorship. Consequently, the August 29, 2016, order of the Circuit Court of Ohio County is reversed, judgment is entered in favor of petitioner Wakim as executrix of Lawrence's estate, and this action is remanded with directions to enter an order releasing the funds in the IOLTA account to the estate of Lawrence Belt.

Reversed and Remanded.

17